Tracy Brian BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–92–00973–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 4, 1993.

Karen Zellars, P.C., Houston, for appellant.

John B. Holmes, Jr., Alan Curry, Houston, for appellee.

Before HUTSON–DUNN, ANDELL and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

Following a mistrial because the jury was unable to reach a verdict, the jury in a second trial found appellant, Tracy Brian Brown, guilty of delivery of cocaine in an amount less than 28 grams. After he pleaded "true" to two enhancement paragraphs, the trial court assessed punishment at 35–years confinement. Appellant asserts seven points of error on appeal. We affirm.

In points of error one, two, three, five, six, and seven, appellant argues that his trial attorney was ineffective by: (1) failing to secure the attendance of defense witness Barbara Williams; (2) failing to request a continuance based on the absence of Barbara Williams; (3) failing to offer a transcript of Barbara Williams' testimony from appellant's first trial; (4) abandoning appellant's defensive evidence and conceding his guilt during his closing argument; and (5) failing to timely object to evidence of an extraneous offense. In point of error four, appellant argues that the trial court erred in refusing to declare a mistrial when a state witness volunteered evidence of an extraneous offense.

On November 8, 1990, Officer Donald DeBlanc, a Houston police officer, was working undercover conducting a narcotics investigation at the J. Thomas Lounge in Houston. Officer Floyd Winkler, DeBlanc's case officer, dropped DeBlanc off immediately south of the lounge, then parked in a lot across the street from the lounge.

DeBlanc testified that after he arrived at the front of the lounge and "milled around," appellant approached and asked him what he was doing. DeBlanc said he was "looking for Charles, trying to get one of those good 20–dollar rocks." Appellant responded, "No, you're not looking for Charles. You mean Russell. He's inside. And I can get you one of those rocks."

Appellant then escorted DeBlanc into the lounge and yelled to Russell Thomas, a co-defendant, that DeBlanc wanted to purchase a rock of cocaine. Thomas, and Barbara Williams, another co-defendant, approached appellant and DeBlanc. Williams asked De-Blanc if he was "the law" and if he had been there before. DeBlanc responded that he was not "the law", that he had not been there before, and that he was "coming there for a girl, to score for a female."

Williams then nodded affirmatively towards Thomas, and Thomas gave DeBlanc a small rock of cocaine in exchange for $20. As DeBlanc and appellant left the lounge, appellant asked for a "bump"[1] of the rock. DeBlanc refused, but instead offered appellant a couple of dollars. Appellant then offered to sell DeBlanc a crack pipe. DeBlanc agreed, and gave appellant three dollars in exchange for the pipe.

DeBlanc then walked away from the lounge and, over a body microphone, gave a description of the suspects to the arrest team. After the arrest, DeBlanc made a positive identification of appellant, Thomas, Williams, and Thomas Erving (Shorty). A subsequent analysis of the substance De-Blanc purchased confirmed that it was 240.1 milligrams of 86.9 percent pure cocaine.

Thomas' testimony conflicted with that of the officers. He admitted to delivering a twenty-dollar rock to DeBlanc, but denied that appellant participated in the delivery. In addition, Thomas denied both that appellant had introduced DeBlanc to him, and that appellant was inside the lounge during the transaction. Thomas stated that he, Williams, and Shorty were arrested inside the lounge, and that he never saw appellant being arrested. Finally, although Thomas admitted that Shorty worked for him, he denied appellant did so.

### Ineffective assistance of counsel

In *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986), the Court adopted the federal standard for reviewing claims of ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674

(1984). Appellant must show that trial counsel's performance was deficient, and that the deficient performance prejudiced the defense so as to deprive him of a fair trial, a trial with a reliable result. *Id.*

This standard had never been interpreted to mean that the accused is entitled to errorless or perfect counsel. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim.App.1990); *Chapman v. State*, 859 S.W.2d 509, 516 (Tex.App.—Houston [1st Dist.] 1993, no pet.). When reviewing a claim of ineffective assistance of counsel, judicial scrutiny of counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Welborn*, 785 S.W.2d at 393. Whether the *Strickland* standard has been met is to be judged by "the totality of the representation." *Id.* Isolated instances in the record reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or separating out one portion of trial counsel's performance for examination. *Id.* Appellant must show omissions or other mistakes made by counsel that amount to professional errors of a magnitude sufficient to raise a reasonable probability that the outcome of the trial would have been different but for the errors. *Id.*

The test is to be applied at the time of trial, not through hindsight. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex.Crim.App. 1991); *Chapman*, 859 S.W.2d at 516. A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances, and to evaluate the conduct from counsel's perspective at the time. *Stafford*, 813 S.W.2d at 506; *Chapman*, 859 S.W.2d at 516.

### Testimony of Barbara Williams

In his first three points of error, appellant argues that his trial attorney was ineffective by: (1) failing to secure the attendance of defense witness Barbara Williams, who testified at appellant's first trial; (2) failing to request a continuance based on the absence

---

1. A street term for a small amount of the rock of cocaine.

of Barbara Williams; and (3) failing to offer a transcript of Barbara Williams' testimony from appellant's first trial. In his seventh point of error, appellant argues that the totality of the representation undermined the reliability of the results. Because the *Strickland* standard requires us to view all ineffective assistance of counsel complaints based on a totality of representation, we consider point of error seven to be subsumed by appellant's individual claims.

■ To support his argument, appellant refers us to a copy of a certified copy of the transcription of Williams' testimony from the first trial. Because this testimony is outside the record of the second trial, the judgment of which is the basis of this appeal, the testimony is not properly before us and we may not consider it. Material outside the record that is improperly included in or attached to a party's appellate brief may be stricken. *Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498, 501 (Tex.App.—Austin 1991, writ denied); Tex.R.App.P. 50(a).

■ The decision whether to call a witness is clearly trial strategy and, as such, is a prerogative of trial counsel. *Hill v. State*, 666 S.W.2d 663, 668 (Tex.App.—Houston [1st Dist.] 1984), *aff'd*, 686 S.W.2d 184 (Tex.Crim. App.1985). Matters of trial strategy will be reviewed only if an attorney's actions are without any plausible basis. *Simms v. State*, 848 S.W.2d 754, 757 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd).

In the case before us, the record is clear that appellant's trial counsel had initially intended to call Williams as a defense witness. Before jury selection, appellant's counsel requested a delay of trial to be certain that two subpoenaed witnesses (Thomas and Williams) would be present. In response to the subpoena and attachment, Williams had in fact appeared in court on Monday of the week of trial. After giving the process server a phone number and her assurances that she would be available on a one-hour call, she was released. The phone number, however, belonged to someone else. During this preliminary proceeding, the court stated:

I'm inclined to begin the trial since it's scheduled to start this week, give him any assistance that I can to locate his witnesses and bring them to the courtroom, or give him any necessary delay that might permit him—if his witnesses are available.

As a matter of fact, if we run into any former testimony problem, we will address that so he will not be denied the testimony of the witness that previously testified.

During trial, after Thomas testified for the defense, appellant's trial counsel called Williams to testify. There was no response, whereupon, trial counsel requested an attachment. The court responded that an attachment had issued the previous day. The court then recessed to attempt to locate Williams. Nothing further is reflected in the record about Williams until after argument, at the punishment stage.

At the punishment stage, the trial court entered the following into the record:

I take judicial notice of the following fact—there was a reluctance on the part of counsel for the defense to proceed with trial this week because he wanted additional time to secure certain witnesses in the case.

Russell Thomas was, in fact, secured and did testify; and, apparently, Russell Thomas had testified earlier in the case. It was brought to the Court's attention that there was a transcription of the testimony of witnesses at the first trial. And that in addition to Russell Thomas having testified, also Barbara Williams testified at the first trial; and the transcription of her testimony was available in the courtroom. I would like the record to further show that the Court took necessary steps to issue, or cause to be issued, writs of attachment to secure the presence of the defense witnesses that were requested by the defense; and that Russell Thomas was, in fact, secured either voluntarily or through execution of the writ of attachment and that he was placed in custody until such time he could testify, at which time he was released after he had given testimony.

I would like the record to also show that had the Court been requested during the trial to give additional time to secure the presence of Barbara Williams as a witness,

that the Court would have afforded additional time; that the Court several times, off the record, asked the defense whether or not they were making progress in securing the presence of Barbara Williams. I would like it to be known also that there was some mention by the Court in the presence of counsel of the possibility of offering former testimony if the predicate was supplied indicating unavailability of the witness.

I want the record to further show that after the testimony was completed—very shortly after the testimony was completed and perhaps during the progress of arguments in the case—that Barbara Williams was brought to the courtroom, made herself known; and, of course, the Court examined her about where she had been in the meantime. I do not think it was on the record. It's not on the record, but she was present.

Had I been requested to do so, I may have reopened the trial for purpose of presenting such testimony. It was indicated to the Court that Barbara Williams has had at least three previous felony convictions which may, of course, have affected her credibility as a witness.

Furthermore, I want to remind the record again that her testimony was available even before she appeared, in my opinion, through means of reading the court reporter notes, or the transcription of the court reporter notes, from the previous testimony in the case.

■ This entire sequence of events indicates that there was serious contemplation by trial counsel to examine Williams. Apparently, however, something happened to lead counsel to a different conclusion. Plausible explanations include: (1) trial counsel talked to Williams and determined her testimony would be harmful to appellant; (2) trial counsel talked to jurors from the mistrial and determined that but for Williams testimony, there would have been an acquittal; or (3) Williams three prior felony convictions would have affected her credibility. In the face of Williams' presence in the court during arguments and the apparent availability of her previous testimony, we find that trial counsel's failure to call Williams as a defense witness or to offer her previous testimony into the record represented well-reasoned trial strategy.

## Closing argument

In point of error six, appellant argues that his trial counsel was ineffective during his closing argument by abandoning appellant's defensive evidence and conceding his guilt under the law of the parties. Appellant claims that the *italicized portions* of defense counsel's argument render his performance ineffective.

**Defense Counsel:** But be that as it may, that doesn't deal with what I deem to be the most crucial issue in this case; and that's the fact that the State has filed the wrong charge in this case. They filed the wrong case here.

*You've got a situation—when you just start talking in a very basic street-type term, you've got a dope user coming to buy dope from a place where they have known pushers. And this dope user has asked the question, "What do you want"; and the user says, from the other user, "I want a 20-dollar rock." Well, now this other dope user helps the supposed dope user get himself some dope.*

*Ask yourself: Did this person aid, encourage, help, and assist this other dope user to get ahold of some dope? And does that make the dope user a pusher because the one dope user takes another supposed dope user to a known admitted pusher?*

And the testimony conflicts there. The pusher says there weren't no words from the one person. The officer says yes, there was. Not only did he point at him—you know, you just have to think about this; you're going to go buy some dope and go into a place and shout across the hall, "We want a 20-dollar rock." You know, that's kind of strong there.

I'm not going to—if you've got a place that's supposed to be open, a public place that's supposed to be open—if that's how they do their dope transaction, that's kind of wide open. And I would suspect people would have used a little more discretion in

those types of transactions in the event you don't know if there are some undercover officers sitting in the place waiting, trying to see what's going on.

*But in this case, it's against the law to help somebody buy dope even if this person is a dope user just like you.* If you aid this dope user, just like you, in getting some dope from a pusher, does that make you a pusher? You've got a 20–dollar rock situation involved in a case like this. And does that make you a pusher? Why didn't they file that case against him? *It's clear that he aided, abetted, and assisted another supposed user in order to get some dope,* if you believe the testimony of the officer.

Now, how did we know he was helping this doper? Well, now, the officer admits he didn't give the accused anything for bringing the officer in. *The officer says that this man tried to get a bump after they left the place, some of the dope he had. It's no more than one dope head trying to get some dope from another dope head for pointing out to the dope head who the pusher is.*

If that makes you a pusher, big-time pusher, then under our laws—I just don't see it. Does that make you a pusher? You've got people out there, they can't help themselves. Does that make them a pusher, these users, these dope heads? Does that make them a pusher? They need help. *And we certainly aren't treating things properly by dealing with these same people in a super-technical way, in a super-technical way by trying to identify him with this person that got up on the stand and testified, who in my mind is lower than, lower than—*

**Prosecutor:** *Objection to what is in defense counsel's mind as being improper argument.*

**Court:** *Sustained.*

*A person like that is—anybody that would confess that they've made money living like that is just a low person, not even a person.* But these are the parasites, the parasites that get people strung out to the point where they can't help themselves, hang their own. They can't do nothing.

They can't help themselves. Does that make them a pusher?

They filed the wrong charge here, if you believe the officer. *There's no doubt that that person, the officer who was masquerading as a dope head, was assisted in his quest to buy some dope by this man.* It is undisputed, if you believe the officer, that this man asked him for a piece of the dope he bought for directing him to the pusher. It's undisputed. Does that make this man a pusher?

This man—this charge has been pending for 21 months, 21 months of punishment on something like this, 21 months of wasting the taxpayers' money on something like this. When you've got people dealing dope, pushers walking around these streets on probation, on probation. And this is the man that admitted to you that he not only made the delivery but he admitted to you how much money he was making off of it.

They filed the wrong charge. It is just as logical that this man—and, in fact, more logical when you stop and consider the total testimony given by the officer—that this man was helping the officer.

The prosecutor is going to get up and make an argument to you, and he has that right. There are a lot of things I may have wanted to say to you that I won't have a chance to answer. But I'd ask you if certain issues are raised by him that I would have raised or could have raised, that you answer those issues for Tracy Brown in your own mind.

But I think based on the evidence that they've produced here—you all will have to render your verdict individually, this is an individual thing; and then you collectively arrive at a unanimous verdict—you can look at it both ways; did he aid and abet a person in buying dope, did he aid and abet a person in delivering dope?

And which one would you—which one makes the most sense based on what you've heard? Does it make more sense that he was masquerading as a doper, or does it make more sense that he was helping the pusher?

The prosecutor indicated to you that people did things for a reason, that they were doing things for a reason. They expect to get something out of what they do. It is obvious by the officer's testimony and by the testimony of the pusher that his man got nothing from the pusher but he was trying to get something from the officer, the user. They filed the wrong charge. And the evidence should raise a reasonable doubt as to whether or not he assisted the pusher in the delivery when, in fact, he assisted the buyer into making the buy.

■ Considering the entirety of the argument rather than only those portions referred to by appellant, it appears that defense counsel urged the jury to consider: (1) whether appellant's actions made him culpable for the charged offense, delivery of cocaine, rather than some lesser drug offense; (2) whether Officer DeBlanc's testimony was credible; or (3) whether appellant should be helped as a user rather than convicted as a pusher. One might question the tactics or style of defense counsel's argument, especially where he refers to appellant as a "dope head" and concedes that appellant assisted another "dope head" in obtaining drugs. However, whether his tactics or style rise to the level of ineffectiveness is a different matter. A defendant's trial counsel does not necessarily render ineffective assistance of counsel by even conceding the defendant's guilt. *Hathorn v. State*, 848 S.W.2d 101, 118 (Tex.Crim.App.1992); *see also Jordan v. State*, 859 S.W.2d 418, 422 (Tex.App.—Houston [1st Dist.] 1993, no pet.).

■ In *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984), the Court stated that "if counsel entirely fails to subject the prosecution's case to the meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." We find that the argument as a whole did not fail to subject the prosecution's case to meaningful adversarial testing.

Further, appellant has not shown that the result of the proceeding would have been different. Appellant implies that we should consider the mistrial as the showing for the second prong of *Strickland*, that, but for the totality of his trial attorney's representation, the result of the proceeding would have been different. We disagree. In determining whether ineffective assistance of counsel exists, we cannot compare counsel's performance in the trial on appeal with counsel's performance in the mistrial. Our review is limited to the record before us. We cannot find that defense counsel's argument constitutes ineffective assistance of counsel.

We overrule appellant's points of error one, two, three, six, and seven.

### Extraneous offense
### Ineffective assistance

■ In point of error five, appellant argues that his trial attorney was ineffective by failing to make a timely objection and motion to disregard when Officer DeBlanc, in an unresponsive answer, volunteered evidence of an extraneous offense dealt with in point of error four. Counsel's failure to object to the extraneous matter at the time it surfaces, an action which ordinarily waives appellant's right to complain of the error, is not automatically transformed into grounds for relief for ineffective assistance of counsel. *Ingham v. State*, 679 S.W.2d 503, 507 (Tex.Crim.App. 1984). We overrule point of error five.

### Trial court error

In point of error four, appellant argues that the trial court erred in refusing to declare a mistrial when a State's witness, in an unresponsive answer, volunteered evidence of an extraneous offense.

The following occurred during cross-examination of Officer DeBlanc by appellant's trial counsel:

Q: Did you give Tracy Brown money for drugs in his hand?

A: Did I give this defendant—

Q: Tracy Brown, money for drugs?

A: Well, the crack pipe had traces of cocaine.

Q: Sir, my question to you was: Did you give Tracy Brown money for drugs, for a drug transaction in his hand?

Court: Can we take it with the understanding that you're not talking about any crack pipe, so-called?

Defense counsel: That is correct, Your Honor.

A: It would be accurate to say I did not.

Q: So while inside the lounge, you never put money in Tracy Brown's hand?

A: That's right, sir, I did not.

At the time DeBlanc responded with "the crack pipe had traces of cocaine," trial counsel neither made an objection nor a motion to disregard the unresponsive answer. Later, during a recess, counsel moved for a mistrial, and argued that to have made a contemporaneous objection would have magnified the prejudice in front of the jury and that an instruction to disregard would have been fruitless. The trial court overruled the motion for mistrial.

An accused is entitled to be tried on the accusations made in the State's pleading and not for some collateral crime or for being a "criminal" generally. *Young v. State,* Tex.Crim. 164, 261 S.W.2d 836, 837 (1953); TEX.R.CRIM.EVID. 404(b). There are two exceptions to this rule. First, if testimony is necessary to prove a contested element of the crime charged, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Second, if testimony shows the context in which the criminal act occurred, where the evidence is so inextricably tied to the commission of the offense that its introduction is reasonably necessary to allow the jury to realistically evaluate the evidence. *Helwig v. State,* 661 S.W.2d 295, 295–96 (Tex.App.— Houston [1st Dist.] 1983, pet. ref'd).

The evidence of cocaine in the pipe was not wholly unconnected with the delivery offense, but was in connection with the negotiations of some sort of payment by the officer to appellant for providing drug purchase information to the officer. We hold that the introduction of this evidence as part of the context of the offense. We overrule point of error four.

We affirm the trial court's judgment.