NO. 07-02-0423-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JUNE 17, 2004

_____

ERIC DEWAYNE WHITE, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 9TH DISTRICT COURT OF MONTGOMERY COUNTY;

NO. 02-08-05354-CR; HON. FRED EDWARDS, PRESIDING

_____

Before REAVIS and CAMPBELL, JJ., and BOYD, S.J.[1]

Appellant Eric Dewayne White brings this appeal from his convictions for the felony grade offenses of two counts of aggravated assault, attempted aggravated sexual assault, and aggravated kidnapping. His punishment was assessed by the jury at 20 years, 7 years, 20 years, and 60 years, respectively. With the assessment of punishment for the attempted

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004).

aggravated sexual assault conviction, the jury made an affirmative use of a deadly weapon finding.

Appellant's appellate counsel has now filed an *Anders* brief in which he states he has thoroughly examined the trial record and concluded that the appeal is without merit. *See Anders v. California*, 386 U.S. 738, 744-45, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *High v. State*, 573 S.W.2d 807, 809-11 (Tex. Crim. App. 1978). In the brief, counsel has certified that he has mailed a copy to appellant and explained appellant's right to file a *pro se* brief. Counsel has also filed a motion seeking withdrawal from the case. Appellant has exercised his right to file a *pro se* brief. Because the brief is a response to the *Anders* brief filed by his counsel, it is not a brief within the contemplation of the Rules of Appellate Procedure, and the requirements of those rules are not applicable. Thus, if we can discern any arguable issues presented by appellant, it is our duty to examine the record and determine if reversible error is presented. *See Stelbacky v. State*, 22 S.W.3d 583, 586-87 (Tex. App.–Amarillo 2000, no pet.).

In his brief, there are 11 discernible issues. Those issues are: 1) there is fundamental error in the indictment; 2) the evidence is legally and factually insufficient to support a conviction for aggravated assault; 3) the evidence is legally and factually insufficient to support a conviction for attempted aggravated sexual assault; 4) the evidence is legally and factually insufficient to support a conviction for aggravated kidnapping; 5) the trial court erred in denying appellant's request for instructions on lesser-included offenses; 6) appellant's Sixth Amendment right to a petit jury drawn from a representative cross-

2

section of the community was denied and the trial court erred in failing to quash the jury panel; 7) the "[f]ailor [sic] of lawyer to file a sworn writing to challenge the array of jury's [sic]" is ineffective assistance of counsel; 8) the trial court erred in admitting the eyewitness identification from the photographic line-up because the photographs were not all black males; 9) the trial court erred in denying appellant's motion to suppress the in-court identification of appellant and the "photographic identification" because of the suggestive show-up identification by one of the victims; 10) the trial court erred in admitting appellant's juvenile adjudication during the punishment hearing; and 11) the officers illegally entered appellant's mother's home and illegally arrested him without a warrant.

Proper discussion requires us to review the pertinent facts in the record. The State's evidence showed that on June 6, 2001, Jacqueline Vasquez was in the kitchen of her parent's home making sandwiches for herself and her brother Abraham. It was night, the lights were on inside the house, and the window blinds were open. Abraham was in the living room watching television. Jacqueline noticed that the garbage needed to be taken out, so she took the bag and went through the garage to a door that opened into the back yard. As she arrived at the trash can and started to deposit the bag, "all of a sudden," she heard something behind her, felt something in the back of her head, turned around, and "saw a guy and he had his gun pointed right at [her] face."

The "guy," later identified as appellant, told her to go into the garage. Because, she averred, she was frightened that the man would use the gun, she complied. She said that he told her to sit down on a bed in the garage. She then told the man that she was not alone and called Abraham, who heard her and went into the garage. The man had a grip

3

on her with the gun pointed at her. The assailant made Abraham sit on the bed next to Jacqueline and started looking for something. As he did so, Abraham, who spoke no English, testified through an interpreter that appellant "would turn his back on us momentarily, but when he would turn back around and face us, he would point the gun at her and I." The man then sought to tie Abraham's hands behind his back as tightly as possible but, because Abraham kept his hands apart, he was able to untie himself.

Because he did not speak English, Abraham told his sister to ask the man what he wanted. Jacqueline did so and, in addition told him he could go inside the house and take whatever he wanted "but leave us alone." The man replied that "he wanted it all," grabbed his testicles, and pointed at Jacqueline. He then told Jacqueline to "open" her legs. When she refused to do so, Jacqueline said that the intruder "grabbed his gun and he kind of pushed my knee to the side so I could open my legs." He attempted to open her legs with his gun hand and when she moved her legs back together, she said he hit her on the side of her face with his gun, which resulted in a bleeding cut. Jacqueline also said she cried and begged him to leave her alone.

The intruder told Jacqueline to shut up and hit her again with his gun. At that point, Abraham grabbed a metal folding chair and hit the man as hard as he could. Jacqueline was able to run into the house and call 911. During the course of their struggle, the assailant scratched Abraham, pointed the gun at him, and tried to fire it, but the gun did not fire. Abraham fled into the kitchen, looked for something to defend himself with, and found nothing but returned to the garage acting as if he had a weapon. The intruder initially tried

4

to prevent Abraham from returning to the garage, but when he was unable to do so, he turned and fled.

When two police officers arrived at the scene, they were informed of the intruder's description and that "the brother was chasing the black male through the street from the house." The suspect was described as a tall "black male wearing a tee shirt and jogging pants." About two blocks from the house, the officers saw a suspect matching the description given them. One of the officers (Officer Keleman) recognized appellant. The officers pulled up in their marked patrol car, and, as they did so, "[a]s soon as [Officer Harper] opened up the passenger's side door, the individual took off running." Although other patrol officers joined in the chase, the suspect outran them.

After the officers lost track of the suspect, they returned to the house, learned that the suspect had possession of a gun, and notified "EMS," which transported Jacqueline and Abraham to the hospital. Officer Keleman and another officer then went to appellant's parent's house where appellant lived and was located about two or three blocks away from Jacqueline's residence. The officer accompanying Officer Keleman went to the back of the house and Officer Keleman went to the front door and knocked. Appellant's mother answered the door and told Officer Keleman that appellant had just come in and was getting in the shower. Officer Keleman asked appellant's mother for a description of the clothes appellant was wearing when he returned to her house, to which she responded by bringing him the clothes. After giving the officer the clothes, she then "walked to the bathroom and told [Appellant] that he had company." She also gave a written consent to search, which the officers used to search for the gun, but they did not find it. Appellant was placed under

5

arrest when he came out of the bathroom.  Subsequently, both Jacqueline and Abraham identified appellant as the intruder from photo lineups.

With reference to the first discerned issue presented by his *pro se* brief, appellant argues that although in the indictment he was charged with use of a deadly weapon, no such weapon was produced at trial and no weapon was mentioned in the trial court's findings of fact and conclusions of law.  In support of his proposition that reversal is required, he relies upon *American Plant Food Corp. v. State*, 508 S.W.2d 598 (Tex. Crim. App. 1974).  However, the proposition espoused in cases such as *American Plant Food* was superseded in the 1987 amendments to article V, section 12(b) of the Texas Constitution and by the change in article 1.14 of the Texas Code of Criminal Procedure.  *See Fisher v. State*, 887 S.W.2d 49, 54-55 (Tex. Crim. App. 1994), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234, 239-40 (Tex. Crim. App. 1997) (an indictment is sufficient that charges the commission of an offense in language sufficient to enable a person of common understanding to understand the charge and the sufficiency of the evidence should be determined by a hypothetically correct jury charge).  Appellant's first discerned issue is overruled.

In the next three discerned issues, appellant challenges the legal and factual sufficiency of the evidence to sustain his conviction of aggravated assault, attempted aggravated sexual assault and aggravated kidnapping.  In appeals such as this in which both the legal and factual sufficiency of the evidence is challenged, we must first determine whether the evidence is legally sufficient to support the verdict.  *See Clewis v. State*, 922

6

S.W.2d 126, 133 (Tex. Crim. App. 1996).  In making that determination, we decide if, after reviewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).  If the answer is yes, then the evidence underlying the conviction is legally sufficient.

If the evidence is legally sufficient, we then consider the factual sufficiency challenge.  *See Clewis*, 922 S.W.2d at 133.  In determining the factual sufficiency of evidence upon which the State has the burden of proof, we must view all the evidence in a neutral light, *see Johnson v. State*, 23 S.W.3d 1, 6-7 (Tex. Crim. App. 2000), and only set aside the verdict if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  *Id.*

In challenging his convictions for aggravated assault on Jacqueline (Count 1) and Abraham (Count 2) respectively, the thrust of appellant's challenge is that the evidence is legally and factually insufficient because his victims did not suffer serious bodily injury and the gun was never produced at trial.

In Texas, a person commits the offense of aggravated assault if he "intentionally, knowingly, or recklessly causes bodily injury to another" and uses or exhibits a deadly weapon during the commission of the assault.  Tex. Pen. Code. Ann. §§ 22.01(a) & 22.02(a) (Vernon Supp. 2004).

In the application paragraph for Count 1, the jury was instructed that if it found that appellant "did then and there intentionally or knowingly or recklessly cause bodily injury to Jacqueline Vasquez, by striking Jacqueline Vasquez on the head with a firearm, and the defendant did then and there use or exhibit a deadly weapon, namely, a firearm, during the commission of said assault," it might convict. That charge tracks the statutory elements of the offense.

In the application paragraph concerning Count 2, the jury was instructed it could convict if it found beyond a reasonable doubt that appellant "did then and there intentionally or knowingly or recklessly cause bodily injury to Abraham Vasquez, by striking Abraham Vasquez in the face with the defendant's hand, and the defendant did then and there use or exhibit a deadly weapon, namely, a firearm, during the commission of said assault." Likewise, this language tracks the language of the statute. With regard to appellant's contention that the evidence was insufficient to show serious bodily injury, because the infliction of serious bodily injury was not an element of the offense charged, evidence of that element was not required for conviction.

As appellant admits, both Jacqueline and Abraham testified that appellant had a gun. Indeed, there was evidence that appellant hit Jacqueline twice in the face with a gun and that he exhibited a gun as he grabbed Abraham's face and scratched it. Although the gun was not recovered, in view of the evidence that appellant was first spotted by the officers about two blocks from the scene of the occurrence and he did not return to his residence until about an hour and a half after the occurrence, a jury could rationally conclude that he had disposed of the gun subsequent to the incident.

8

In regard to the aggravated assault on Jacqueline, there was evidence from both Jacqueline and Abraham that when Jacqueline refused to spread her legs, appellant hit her with the gun, which opened a bleeding cut above her eye. There was also her testimony that when she started crying and begging, he hit her again with his gun. The evidence is both legally and factually sufficient to support the jury's verdict in that regard.

With regard to the conviction of aggravated assault on Abraham, he testified that he grabbed appellant's gun hand and lowered it, giving his sister a chance to escape. At that time, he testified that appellant grabbed his face, scratched it, broke free, raised his gun and tried to fire it. When he could not fire the gun, appellant pushed Abraham. State's Exhibit 11, which was a picture of Abraham's face, shows a reddened area and a small cut or scratch. If accepted by the jury, as it obviously was, the evidence was sufficient to show the use of a gun in the assault. Appellant's second discerned issue is overruled.

In his third perceived issue, appellant challenges the sufficiency of the evidence to support his conviction of attempted aggravated sexual assault. In particular, he asserts the evidence is insufficient because Jacqueline never testified as to any sexual contact, *i.e.*, no clothes were torn, undone, or unzipped, nor was any genitalia exposed.

An attempt to commit an offense occurs if, "with specific intent to commit an offense, he [the accused] does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." Tex. Pen. Code Ann. §15.01(a) (Vernon 2003). A person's conduct constitutes an attempt to commit the aggravated offense if an element that aggravates the offense accompanies the attempt. *Id.* §15.01(b).

9

A person commits aggravated sexual assault if he "intentionally or knowingly causes the penetration of the anus or female sexual organ of another person by any means, without that person's consent" and "uses or exhibits a deadly weapon in the course of the same criminal episode." Tex. Pen. Code Ann. §22.021(a)(1)(A) & (a)(2)(A)(iv) (Vernon Supp. 2004). In its relevant charge, the jury was instructed that it could convict if it found beyond a reasonable doubt that appellant:

> with the specific intent to commit the offense of Aggravated Sexual Assault of Jacqueline Vasquez, [did] an act, namely, striking Jacqueline Vasquez in the head and instructing Jacqueline Vasquez to spread her legs, which amounted to more than mere preparation that tended but failed to effect the commission of the offense, and in the commission of the offense, the defendant used or exhibited a deadly weapon, namely a firearm . . . .

The jury was additionally instructed in pertinent part that "[o]ur law provides that a person commits the offense of aggravated sexual assault if the person intentionally or knowingly causes the penetration of the female sexual organ of another person by any means, without that person's consent." It was further instructed that an attempt to commit an offense occurs "if, with specific intent to commit an offense, a person does an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense intended." The jury charge satisfactorily tracked the applicable statutes.

At trial, Abraham averred that appellant made gestures at Jacqueline, including "grabbing his testicles." Appellant also hit Jacqueline in the face with the gun. Jacqueline testified that after appellant grabbed his crotch, he tried to force her legs apart with his gun. The evidence was amply sufficient to support a conclusion that appellant had the specific intent to have intercourse with Jacqueline without her consent. In particular, his acts in

10

trying to spread her legs apart after grabbing his crotch is sufficient to justify a conclusion as to appellant's specific intention without the necessity of having actual sexual contact with her or appellant having actually exposed his genitals. Appellant's third perceived issue is overruled.

In his fourth perceived issue, appellant argues the evidence is not sufficient to support his kidnapping conviction. In particular, he argues it is insufficient because Jacqueline was never abducted, she was in her home which was a safe place, and no weapons were shown or produced at trial to show she was held against her will. The statute provides that a person commits the offense of aggravated kidnapping if he "intentionally or knowingly abducts another person with the intent to . . . inflict bodily injury on [her] or abuse [her] sexually" or if he "intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense." Tex. Pen. Code Ann. §20.04(a)(4) § (b) (Vernon 2003).

With regard to the application paragraph, the jury was charged that it might convict if it found beyond a reasonable doubt that appellant "intentionally or knowingly abducted Jacqueline Vasquez, with the intent to prevent her liberation, by using or threatening to use deadly force, namely threatening to shoot her with a firearm, and with the intent to inflict bodily injury on Jacqueline Vasquez or violate or abuse her sexually." The charge satisfactorily tracked the statute.

The definition portion of the jury charge tracked the statutory definitions for "abduct" and "restrain" as follows:

11

"ABDUCT" means to restrain a person with intent to prevent her liberation by using or threatening to use deadly force.

"RESTRAIN" means to restrict a person's movements without consent so as to interfere substantially with her liberty, by moving her from one place to another or by confining her. Restraint is "without consent" if it is accomplished by force, intimidation or deception.

*See* Tex. Pen. Code Ann. §20.01(1)(A) & (2)(B) (Vernon Supp. 2004).

Jacqueline's testimony, which we have recited in some detail, is amply sufficient to show that appellant restrained her freedom to move with the use of force and with a gun. Abraham's testimony that he saw appellant holding Jacqueline with the use of a gun sufficiently corroborates her testimony. Perceived issue four is overruled.

In his fifth perceived issue, appellant posits that the trial court reversibly erred in refusing an instruction on the lesser-included offenses of assault, attempted sexual assault, kidnapping, unlawful restraint, and false imprisonment. Parenthetically, in 1997, the legislature renamed the crime of "false imprisonment," and it is now called "unlawful restraint." However, substantively, the former "false imprisonment" and the current "unlawful restraint" statutes are identical.[2]

Before a jury charge on a lesser-included offense must be given, a two prong test must be met, namely: 1) the lesser-included offense must be included within the proof necessary to establish the offense charged; and 2) some evidence must exist within the record that if the defendant is guilty, he is guilty only of the lesser offense. Both prongs of

---

[2]*See and compare* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, §1.01, 1993 Tex. Gen. Laws 3586, 3615 with Tex. Pen. Code Ann. §20.02 (Vernon 2003).

the test must be met, regardless of whether such an instruction is requested by the defendant or the State. *Hampton v. State,* 109 S.W.3d 437, 440 (Tex. Crim. App. 2003).

There is no evidence in the record that would justify the inclusion of the lesser-included offenses. Each of the offenses committed became aggravated by the use of a gun. As we have discussed, the actual production of the gun used was not necessary. The evidence we have discussed above, if accepted by the jury, clearly shows the use of a gun. There is no evidence that a gun was not used in the commission of any offense committed by appellant. Perceived issue five is overruled.

In his sixth perceived issue, appellant argues that he was deprived of his constitutional right to a trial jury drawn from a representative cross-section of the community and the trial court reversibly erred in failing to quash the jury panel. In his seventh perceived issue, he argues that his lawyer's failure to challenge the jury array in a sworn pleading demonstrates ineffective assistance of trial counsel. The record reveals that one venire person asserted there was only one black person on the jury list. In response to that comment, the trial court noted that while it was true there were "very few" African-Americans on the panel, the African-American population percentage of the county was "less than three percent now."

To satisfy the federal Sixth Amendment right to a jury trial, that jury must be chosen from a panel representing a fair cross-section of the community. *Duren v. Missouri*, 439 U.S. 357, 359, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). In *Pondexter v. State*, 942 S.W.2d 577 (Tex.

13

Crim. App. 1996), *cert. denied,* 522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997), the Court instructed that to establish a *prima facie* violation of that requirement, an appellant must show: 1) the group alleged to be excluded is a "distinctive" group in the community; 2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and 3) this under-representation is due to the systematic exclusion of the group in the jury selection process. *Id*. at 580.

Appellant arguably has met the first prong of the test, *i.e.,* the group alleged to be excluded is a "distinctive" one within the community. However, appellant has failed to meet the second and third prongs of the test. Nothing in the record is actually sufficient to show the racial composition of the panel. Moreover, assuming that there was only one African-American on the particular jury panel, there is nothing to show the requisite "systematic exclusion" of that racial group in the county of trial. A disproportionate representation in a single panel is not sufficient to demonstrate an unconstitutional systematic exclusion of distinctive racial groups. *Pondexter*, 942 S.W.2d at 581. Indeed, in view of the judge's statement as to the racial mix extant in the county, the paucity of African-Americans on the particular jury panel would seem to be more likely the result of the small percentage of that racial group in the county than the result of a systematic exclusionary policy. Appellant's perceived issue six is overruled.

In his seventh perceived issue, appellant argues he did not receive effective assistance of counsel at trial. In the seminal case of *Strickland v. Washington*, 466 U.S.

14

668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court instructs that the benchmark for judging any claim of counsel ineffectiveness must be whether his trial conduct so undermined the proper functioning of the adversarial process as to demonstrate that the trial cannot be relied upon as having produced a just result. *Id.* 466 U.S. at 696. That standard was pronounced applicable to all such claims in Texas by the court in *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).

The standard for showing ineffective assistance of counsel is usually stated as having two parts, *i.e.*, attorney performance and resulting prejudice. It is usually stated as: 1) whether counsel's performance was deficient; and 2) whether, but for counsel's deficient performance, the result of the proceeding would have been different. *Hernandez*, 988 S.W.2d at 770, n.3. Absent both showings, we cannot conclude that appellant's conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Boyd v. State*, 811 S.W.2d 105, 109 (Tex. Crim. App.), *cert. denied,* 502 U.S. 971, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991). Additionally, by statute, Montgomery County was required to select venires by computer from voter registration and driver's license lists. Suffice it to say, appellant has failed to meet the requisites of the *Strickland* test to show his trial counsel adversely affected the outcome of his trial by failing to challenge the jury venire. Appellant's seventh perceived issue is overruled.

In his eighth and ninth challenges, appellant contends the trial court reversibly erred in denying his motion to suppress the in-court identification of him as the miscreant because it was the result of an impermissibly suggestive photographic lineup not entirely composed

15

of black males and because of suggestive actions by the police at the scene. The photographic lineup received in evidence is shown as a part of the record. Although Jacqueline testified that the lineup was not composed entirely of African-American males, her identification of appellant as her assailant was firm and unweakened under cross-examination. She testified that when she had just taken the trash to the trash can, appellant put a gun to her head, and she saw "a guy and he had his gun pointed right at my face" a few inches away. When appellant told her to go into the garage, she said she could see appellant "because the light in the kitchen was still on, and since on our door that's between the kitchen and the garage, there's a window between the middle of the door, so the reflection in light from the kitchen went through the window, and there was some light in the garage." The record shows that she spoke to him when he was right in front of her and when she asked what he wanted, he was still in front of her when he grabbed his testicles. He was close to her when he tried to push her legs apart with the gun and when he hit her in the face with the gun. While the lineup may not have been composed exclusively of black males, the color of appellant's skin was not so significantly different from that of the other participants as to make him stand out.

To be entitled to reversal, an appellant must show by clear and convincing evidence that the identification was irreparably tainted. *See Barley v. State*, 906 S.W.2d 27, 32-35 (Tex. Crim. App. 1995), *cert. denied,* 516 U.S. 1176, 116 S.Ct. 1271, 134 L.Ed.2d 217 (1996). Appellant has failed to make this showing. Appellant's eighth and ninth perceived issues are overruled.

In his tenth perceived issue, appellant contends the trial court reversibly erred in admitting his "juvenille [sic] court adjudication." However, in pertinent part, article 37.07 of the Code of Criminal Procedure provides that "evidence may be offered by the state and the defendant of an adjudication of delinquency based on a violation by the defendant of a penal law of the grade of: (A) a felony; or (B) a misdemeanor punishable by confinement in jail." Tex. Code Crim. Proc. Ann. art. 37.07§3(a)(1) (Vernon Supp. 2004). The State's exhibits in question reflect that appellant had been adjudicated of delinquent conduct for 1) Assault-Class A misdemeanor; 2) Theft-State Jail Felony for theft of a firearm, and 3) Criminal Mischief-Class B misdemeanor. These offenses are of a grade punishable by jail confinement and, by statute, were admissible at trial. Appellant's tenth perceived issue is overruled.

In his eleventh perceived issue, appellant contends he was illegally arrested without a warrant. He bases this contention on an affidavit attached to his brief in which his mother states she never gave the officers permission to enter her home. However, no such affidavit appears in the appellate record. Thus, we cannot consider it. *See* Tex. R. App. P. 34.1; *see also James v. State*, 997 S.W.2d 898, 901 n.5 (Tex. App.–Beaumont 1999, no pet.); *Brown v. State*, 866 S.W.2d 675, 678 (Tex. App.–Houston [1st Dist.] 1993, pet. ref'd).

Moreover, appellant testified at the hearing on the motion to suppress evidence. He admitted that he did not hear what his mother said to the officers. Additionally, Officer Keleman's testimony that appellant's mother gave him permission to enter her home was uncontradicted at trial. Appellant's eleventh perceived issue is overruled.

In summary, all of appellant's perceived issues are overruled, counsel's motion to withdraw is granted, and the judgment of the trial court is affirmed.


John T. Boyd
Senior Justice

Do not publish.