**Opinion filed December 22, 2016**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-14-00355-CR & 11-14-00356-CR

_____

### NELSON CARL THOMAS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause Nos. CR22754 & CR22755**

## M E M O R A N D U M   O P I N I O N

In Cause No. 11-14-00355-CR, the jury convicted Nelson Carl Thomas of assault family violence by occlusion and assessed his punishment at confinement for ten years in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 22.01(a), (b–1)(3) (West Supp. 2016). In Cause No. 11-14-00356-CR, the jury convicted Appellant of aggravated assault with a deadly weapon and assessed his punishment at confinement for twenty years in the

Institutional Division of the Texas Department of Criminal Justice. *See id.* § 22.02(a)(2) (West 2011). The jury also assessed a fine of $10,000 for each conviction. In three issues on appeal, Appellant contends that (1) the evidence was insufficient to support a finding that he used or exhibited a deadly weapon, (2) he received ineffective assistance of counsel, and (3) the trial court erred in denying his motion for new trial without a hearing. We affirm.

*Background Facts*

On October 21, 2013, police responded to a call that a person had been shot at a residence in Early. Officer Michelle Sheedy arrived at the scene and saw Appellant lying on the sidewalk bleeding from his abdomen. Medical personnel tended to Appellant, and Officer Sheedy made contact with Appellant's wife, Mica Thomas,[1] and also with her neighbor, Shelia Schulze. Officer Sheedy testified that Thomas was in shock and appeared to be in pain, upset, and distraught. Officer Sheedy stated that Thomas told her that, after she arrived home from work, Appellant assaulted her and that she shot him to defend herself.

Thomas and Appellant were married and had a child together. They separated in 2010 when Thomas and their son moved out. Appellant subsequently found Thomas living in Early, and he began visiting Thomas from time to time to do laundry and take a shower because his utilities had been cut off. Appellant asked Thomas if he could spend the weekend prior to the incident at her house, but she declined his request. Thomas testified that, on the morning of October 21, 2013, she told Appellant he needed to find a home and get his life in order. Thomas then left the house to go to work.

She stated that, after arriving home that afternoon from work, she went into the kitchen where Appellant came up behind her and began assaulting her.

---

[1]We refer to Appellant's wife as "Thomas" in this opinion.

Specifically, Thomas testified: "[Appellant] come up behind me, and I turned around, and he said, 'Do you want to play? Now we're going to play.' And he hit me right up under the chin." Appellant then hit Thomas in the stomach, and then he took her by the arm forcing her into the living room where he threw her onto a futon and said, "I'm in control now. We're going to do what I say." Thomas testified that Appellant then retrieved pepper spray from her work uniform and sprayed her in the face with it. After Thomas washed her face in the kitchen, Appellant sprayed her again with pepper spray and hit her in the stomach.

Thomas testified that Appellant committed multiple acts of violence against her. At one point, Appellant told Thomas that she would be seeing her dad that night. Thomas testified that her dad had been deceased for fifteen years. Thomas testified that Appellant also hit her in the ribs and in the chest. He also choked her around the neck with his hands to the point where she was close to passing out. Thomas made an attempt to escape through the front door of her residence, but Appellant prevented her from doing so. He attempted to tape her mouth shut with electrical tape, but he was unable to do so because the pepper spray on her face prevented the tape from sticking.

Appellant forcibly took Thomas to the bedroom and told her to "get the guns" because they were going to play "Russian roulette." Once in the bedroom, Appellant committed more acts of physical violence against Thomas, including shoving a vibrator down her throat. Appellant eventually ordered Thomas to give him a bag with two handguns in it. As Appellant was attempting to load one of the handguns, Thomas grabbed a shotgun out of the closet and shot Appellant in the abdomen. She testified, "I had to shoot him or he was going to shoot me." After shooting Appellant, Thomas ran out the front door of the house into the yard screaming for someone to call the police. Thomas then ran across the street to her neighbor's yard.

*Analysis*

In his first issue, Appellant challenges the sufficiency of the evidence to support the jury's finding that he used or exhibited a deadly weapon. As the State points out, this argument only implicates Appellant's conviction for aggravated assault with a deadly weapon. Specifically, the indictment in Cause No. 11-14-00356-CR charged that Appellant "intentionally, knowingly, or recklessly [caused] bodily injury to [Thomas], by striking or kicking her in the chest, back, or face, and [Appellant] did then and there use or exhibit a deadly weapon, to-wit: [a] firearm, during the commission of said assault." Conversely, the indictment in Cause No. 11-14-00355-CR made no reference to a firearm.

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports

conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

As pertinent to Appellant's conviction for aggravated assault, a person commits an assault if he intentionally, knowingly, or recklessly causes bodily injury to another, including his spouse. PENAL § 22.01(a)(1). A person commits aggravated assault with a deadly weapon if the person commits an assault, and the person uses or exhibits a deadly weapon during the commission of the assault. *Id.* § 22.02(a)(2). A firearm is a deadly weapon per se. *Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985); *see* PENAL § 1.07(a)(17)(A).

Appellant argues that the evidence presented at trial was insufficient to establish that he used or exhibited a deadly weapon. He first contends that there is no evidence that he used a firearm. He then contends that the "key inquiry here" is whether the evidence was sufficient to establish that he exhibited the .22 pistol that Thomas referenced in her testimony. He contends that the .22 pistol was not within his reach when he was shot. Appellant further contends that the .22 pistol was not found during the initial search of the crime scene by the police and that it was only found after Thomas and her family "cleaned" the scene. Appellant contends that the physical evidence contradicted any inference that he exhibited the .22 pistol. We disagree with Appellant's evaluation of the evidence.

Thomas testified that, during the time that Appellant was physically assaulting her by choking her, he told her: "[W]e [are] going to play a little game called Russian roulette." Thomas testified that Appellant initially attempted to remove a revolver from its holster but that, when he realized that there were not any shells for the revolver, he told her: "I want one of the other guns. I want one with a clip." Thomas told Appellant that the "little silver one" was in the bag that he threw down. Thomas testified that, when "[Appellant] was trying to put the clip into the gun," she pulled

the shotgun from her bedroom closet and shot Appellant with it. Thomas testified that, "if he ever got that clip in there, he was going to kill me." Additionally, Danny Crawford, a Texas Ranger with the Texas Department of Public Safety, testified that the physical evidence corroborated Thomas's story.

Thomas detailed an assault committed by Appellant occurring over an extended period of time in multiple locations throughout her house. She specifically testified that, during the course of the assault, Appellant told her they were going to play Russian roulette and then ordered her to give him a bag containing handguns. She further testified that he had handled two of these guns and that she shot him as he was attempting to load a clip into the .22 pistol.

Appellant bases his sufficiency challenge on evidence that he contends contradicts Thomas's testimony. As previously noted, the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. To the extent that other evidence may have contradicted Thomas's version of the events, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. Viewing all of the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found that Appellant used or exhibited a deadly weapon during the commission of his assault on Thomas. We overrule Appellant's first issue.

In his second issue, Appellant contends that he received ineffective assistance of counsel at trial. Appellant primarily asserts that trial counsel was ineffective by not presenting exculpatory and mitigating evidence. He additionally contends that trial counsel failed to object to leading questions asked by the prosecutor at trial.

In order to establish that trial counsel rendered ineffective assistance at trial, Appellant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have

6

been different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668 (1984); *Andrews v. State*, 159 S.W.3d 98 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999). Courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

"[A]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Under normal circumstances, the record on direct appeal is generally undeveloped and rarely sufficient to overcome the presumption that trial counsel rendered effective assistance. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). The Court of Criminal Appeals has said that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). If trial counsel did not have an opportunity to explain his actions, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). We note that, although Appellant filed a motion for new trial alleging ineffective assistance of counsel, the trial court did not hold a hearing on the motion during which trial counsel testified. Accordingly, the appellate record does not contain an explanation from trial counsel concerning his actions.

Appellant initially asserts that trial counsel failed to object to the prosecutor leading its witnesses. Appellant has not identified specific instances in the record where this conduct purportedly occurred. Instead, he generally alleges that "the record is replete with a failure of the defense counsel to lodge objections to the State's leading its witnesses." A defendant alleging ineffective assistance of counsel had the burden to prove his claim under both *Strickland* prongs. *Thompson*, 9 S.W.3d at 813. By not identifying specific instances when trial counsel allegedly failed to object to leading questions, Appellant has not met his burden to establish either deficient performance or sufficient prejudice. A defendant's failure to make either of the required showings defeats the claim of ineffective assistance. *Rylander*, 101 S.W.3d at 110; *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong."). Furthermore, "[d]espite the general rule disfavoring the use of leading questions on direct examination, 'it is sound trial strategy for opposing counsel to choose not to object to leading questions when the evidence will come in anyway.'" *Wheeler v. State*, 433 S.W.3d 650, 655 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (quoting *Young v. State*, 10 S.W.3d 705, 713 (Tex. App.—Texarkana 1999, pet. ref'd)). When the record is silent concerning why defense counsel failed to object to the State's use of leading questions, a defendant fails to rebut the presumption that this conduct constitutes reasonable trial strategy. *Id.*

Additionally, Appellant contends that trial counsel had knowledge of and failed to call two available witnesses who would have provided material, exculpatory, and mitigating evidence. A defendant who complains about trial counsel's failure to call witnesses must show that the witnesses were available and that the defendant would have benefited from their testimony. *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Perez v. State*, 403 S.W.3d 246, 252 (Tex.

App.—Houston [14th Dist.] 2008), *aff'd* 310 S.W.3d 890, 897 (Tex. Crim. App. 2010). Appellant bases this claim on two affidavits attached to his motion for new trial. Karen Withnell stated in her affidavit that she would have testified that Thomas told her multiple times that she wanted to get rid of Appellant by "planting drugs on him, shooting him, or having him sent to prison on false charges." Ernest Thomas, Appellant's father, stated in his affidavit that he would have testified that he personally witnessed Thomas "constantly and consistently instigating and pushing [Appellant] to extreme states of rage and anger" and baiting Appellant into arguments. Appellant argues that their testimony would have supported his defensive theory that Thomas set him up in an attempt to kill him.

The decision to call a witness is generally a matter of trial strategy. *Joseph v. State*, 367 S.W.3d 741, 744 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *see Brown v. State*, 866 S.W.2d 675, 678 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) ("The decision whether to call a witness is clearly trial strategy and, as such, is a prerogative of trial counsel."). With respect to Appellant's criticism of trial counsel's decision not to call these individuals as witnesses at trial, we cannot determine whether the decision was a matter of trial strategy because the record does not contain any explanation of trial counsel's decision. When the record is silent as to the reasoning behind an alleged deficiency by trial counsel, "we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). These individuals possibly may have known facts that would have been detrimental to Appellant's defense if trial counsel had called them as witnesses at trial. Accordingly, the record does not affirmatively demonstrate that trial counsel's decision to not call them as witnesses was so outrageous that no competent attorney would have engaged in it. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). We overrule Appellant's second issue.

In his third issue, Appellant contends that the trial court erred in denying his motion for new trial without holding a hearing. A defendant's right to a hearing on a motion for new trial is not absolute. *Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005). Generally, a trial court should hold a hearing if the motion and attached affidavit raise matters that are not determinable from the record and that could entitle the accused to relief. *Id.* "When examining a trial court's denial of a hearing on a motion for new trial, we review for an abuse of discretion." *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). In so doing, we reverse only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.*

Appellant timely filed his motion for new trial pursuant to TEX. R. APP. P. 21.4. He attached the two affidavits referenced above in support of the motion. He referenced the affidavits in a ground claiming that he received ineffective assistance of counsel. He asserted that, if their testimony had been presented, there is a reasonable probability the outcome of the proceeding would have been different. The trial court denied the motion for new trial in a written order, which provided: "On 11-25, 2014, came on to be considered [Appellant's] Motion for New Trial and Motion in Arrest of Judgment, and said motion is hereby: DENIED."

Appellant contends on appeal that the trial court abused its discretion in denying his motion for new trial without a hearing because the affidavits established a need to develop Withnell's and Ernest Thomas's testimony further. We disagree. The affidavits disclosed the matters that these witnesses would have testified to had they been called at trial. Thus, their potential testimony was determinable from the record. TEX. R. APP. P. 21.7 provides that the trial court may receive evidence on a motion for new trial by affidavit. *See Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006) (A trial court may decide a motion for new trial based on affidavits

without hearing oral testimony.).  Furthermore, Appellant asserted that there was a reasonable probability the outcome of the proceeding would have been different if Withnell and Ernest Thomas had testified at trial.  This contention obviously addresses *Strickland*'s "prejudice" requirement.  This is also a matter that the trial court could have determined from the record before it without receiving additional testimony, including testimony from trial counsel concerning trial strategy in not calling these witnesses.  Accordingly, the trial court did not abuse its discretion in denying Appellant's motion for new trial without a hearing to receive additional testimony.  We overrule Appellant's third issue.

*This Court's Ruling*

We affirm the judgments of the trial court.


JOHN M. BAILEY

JUSTICE


December 22, 2016

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.