

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

NO. AP-76,620

EX PARTE LEMMUEL NIVEK HATCHER, Applicant

ON APPLICATION FOR A WRIT OF HABEAS CORPUS
CAUSE NO. 16292B  IN THE 104TH DISTRICT COURT
FROM TAYLOR COUNTY

COCHRAN, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON, KEASLER, HERVEY and ALCALA, JJ., joined. KELLER, P.J., concurred.

A jury convicted applicant of possession with the intent to deliver cocaine, and the trial judge sentenced him to thirty years in prison. The Eastland Court of Appeals affirmed his conviction.[1] Applicant then filed an application for a writ of habeas corpus under Article 11.07, in which he contends that his counsel rendered ineffective assistance at trial–under either the *Strickland* or *Cronic* standard–because he (1) failed to prepare for trial, (2) elicited

---

[1] *Hatcher v. State*, No. 11-08-00193-CR, 2009 WL 3326758 (Tex. App.—Eastland Oct. 19, 2009, no pet.).

prejudicial testimony from applicant's mother, (3) failed to request an accomplice-witness instruction, and (4) delivered an improper closing argument.  Applicant also contends that counsel rendered ineffective assistance on appeal because he failed to argue that the non-accomplice evidence was insufficient to connect applicant to the commission of the offense.

We twice remanded this application and requested that the convicting judge make specific findings and determine if trial counsel was ineffective for any of these reasons.[2] The convicting judge filed findings and recommended that relief be denied.  Because those findings are supported by the record, we will adopt them and deny relief.

## I.

Applicant lived with Antonio Fuentes and Brandi Hyke. The police obtained a search warrant naming applicant as a drug-trafficking suspect. When nine narcotics agents executed the warrant, applicant and Mr. Fuentes were at home. The police found electronic scales, a box of plastic sandwich bags, hydrocodone pills, a pill bottle without a label, and 16 grams of well-hidden cocaine.[3]  They also found a notebook in which the entries divided the rent, utilities, and payments for a washer and dryer into thirds.  In applicant's bedroom they found a black bag with a trace amount of cocaine in it.

---

[2] *Ex parte Hatcher*, No. WR-73,606-01, 2010 WL 2113170 (Tex. Crim. App. May 26, 2010) (not designated for publication); *Ex parte Hatcher,* No. WR-73,606-01, 2010 WL 4525028 (Tex. Crim. App. Nov. 10, 2010) (not designated for publication).

[3] The cocaine was found in a stack of newspapers, most of which were still wrapped in orange plastic sleeves, as if they'd never been opened.

Applicant was charged with possession of cocaine (4 to 200 grams) with the intent to deliver, a first degree felony.[4] The indictment also alleged that applicant had committed this offense in a drug-free zone and had been previously convicted of aggravated assault, making his punishment range 20 to 99 years or life.[5] Before applicant's trial, Ms. Hyke pled guilty to the same offense in exchange for six years' deferred adjudication. She agreed to be "debriefed by the lead investigator Tommy Pope, and [to] be available to testify against both [applicant] and Mr. Fuentes whenever their cases went to trial."

At trial, Ms. Hyke testified that she first became friends with Mr. Fuentes because they worked together. She met applicant later because he was Mr. Fuentes's roommate at a house on Grand Street. She saw the two men deal drugs from the Grand Street house. Later, the three rented a house together on Laurel Street. Applicant and Mr. Fuentes continued to deal cocaine. They hid it "rolled up in the newspaper in the living room" and in "the gutter outside, the rain gutter" and in "a bean bag chair behind the couch." Ms. Hyke observed applicant take part in "probably a hundred transactions" at the two houses.[6] Mr. Fuentes was involved in "about half" of those drug sales. Ms. Hyke also made a handful of deliveries for both men, and once counted out $4,300 cash when the men bought more cocaine from their supplier. Trial counsel did not request, and the trial court did not give, an

---

[4] TEX. HEALTH & SAFETY CODE § 481.112(d).

[5] TEX. PEN. CODE § 12.42(c)(1); TEX. HEALTH & SAFETY CODE § 481.134(c).

[6] This extraneous-misconduct evidence was introduced to show intent, motive, opportunity, and lack of mistake. TEX. R. EVID. 404(b).

accomplice-witness instruction concerning Ms. Hyke's testimony. In closing argument, counsel conceded that the roommates were drug dealers, but he focused on the State's failure to prove that applicant, rather than Mr. Fuentes, possessed the very cocaine that was found during the search.

On appeal, applicant was represented by the same attorney as at trial.

II.

**A.     The *Strickland* Standard**

A defendant has a Sixth Amendment right to effective assistance of counsel. To obtain habeas corpus relief for ineffective assistance of counsel under *Strickland v. Washington*, an applicant must show that (1) counsel's performance was unconstitutionally deficient, and (2) "there is a 'reasonable probability'—one sufficient to undermine confidence in the result—that the outcome would have been different but for his counsel's deficient performance."[7]

There "are countless ways to provide effective assistance in any given case," so a reviewing court must be highly deferential and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."[8]  Strategic or tactical decisions are not

---

[7] *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

[8] *Strickland*, 466 U.S. at 689 (quotation marks and citations omitted).

deficient "unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'"[9]  To establish prejudice, one must show "that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result was reliable."[10]

The applicant has the burden to prove ineffective assistance of counsel by a "preponderance of the evidence."[11] His allegations of ineffectiveness must be based on the record, and the presumption of a sound trial strategy will generally not be overcome in the absence of evidence of the attorney's reasons for his conduct.[12]  "The reviewing court must look to the totality of the representation, and its decision must be based on the facts of the particular case, viewed at the time of counsel's conduct so as to eliminate hindsight bias."[13] The "ultimate focus of inquiry must be on the fundamental fairness of the proceeding."[14]

The Sixth Amendment also entitles a criminal defendant to effective assistance of counsel when pursuing a first appeal of right.[15]  In assessing the effectiveness of appellate

---

[9] *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

[10] *Strickland*, 466 U.S. at 687.

[11] *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

[12] *Ex parte Martinez*, 330 S.W.3d at 901; *Busby v. State*, 990 S.W.2d 263, 269 (Tex. Crim. App. 1999).

[13] *Ex parte Martinez*, 330 S.W.3d at 901; *see also Strickland*, 466 U.S. at 690.

[14] *Strickland*, 466 U.S. at 696.

[15] *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).

counsel, we apply the test set forth by the Supreme Court in *Strickland v. Washington*.[16]

## B.     The *Cronic* Standard

In *United States v. Cronic*,[17] the United States Supreme Court recognized a limited exception to *Strickland*, holding that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable."[18] That is, "*Cronic* held that a Sixth Amendment violation may be found without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial when circumstances exist that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."[19]  For *Cronic* to apply, however, the attorney's failure to test the prosecutor's case "must be complete."[20]  Courts have found this complete failure in the situation where counsel is physically present but mentally absent.[21]  Courts have

---

[16] 466 U.S. at 687.

[17] 466 U.S. 648 (1984).

[18] *Cronic*, 466 U.S. at 658-59; *Cannon v. State*, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008) (recognizing that, "if an appellant can demonstrate that defense counsel 'entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing,' so that there was a constructive denial of the assistance of counsel altogether, then prejudice, because it is 'so likely,' is legally presumed.").

[19] *Wright v. Van Patten*, 552 U.S. 120, 124 (2008) (per curiam) (internal quotation marks, citation, and bracket omitted).

[20] *Bell v. Cone*, 535 U.S. 685, 696-97 (2002).

[21] *Ex parte McFarland,* 163 S.W.3d 743, 752 (Tex. Crim. App. 2005) ("Under *Cronic* and its progeny, a defendant is denied counsel not only when his attorney is physically absent from the proceeding, but when he is mentally absent as well, i.e., counsel is asleep, unconscious, or otherwise

sometimes found this complete failure where counsel abandons his client in closing argument by conceding his guilt.[22]

## C.     Standard of Review

This Court is the ultimate factfinder in habeas corpus proceedings.[23] The trial judge on habeas is the original factfinder–the "collector of the evidence, the organizer of the materials, the decisionmaker as to what live testimony may be necessary, the factfinder who resolves disputed fact issues, the judge who applies the law to the facts, enters specific findings of fact and conclusions of law, and may make a specific recommendation to grant or deny relief."[24] We will usually defer to and accept a trial judge's findings of fact when they are supported by the record.[25]  When our independent review of the record reveals that the trial judge's findings and conclusions are not supported by the record, we may exercise our authority to make contrary or alternative findings and conclusions.[26]

III.

## A.     Applicant Has Failed to Prove that Counsel Was Constitutionally Deficient.

actually *non compos mentis*.").

[22]  *See United States v. Williamson*, 53 F.3d 1500, 1511 (10th Cir. 1995) (collecting cases in which closing statements admitting guilt on the only disputed fact issues was *Cronic* error).

[23] *Ex parte Reed*,  271 S.W.3d 698, 727 (Tex. Crim. App. 2008).

[24] *Id*.; *see also Ex parte Van Alstyne*, 239 S.W.3d 815, 817 (Tex. Crim. App. 2007) (per curiam);  *Ex parte Simpson*, 136 S.W.3d 660, 668-69 (Tex. Crim. App. 2004).

[25] *Ex parte Reed*, 271 S.W.3d at 727; *Ex parte Van Alstyne*, 239 S.W.3d at 817.

[26] *Ex parte Reed,* 271 S.W.3d at 727.

1.    *Applicant has failed to prove, by a preponderance of the evidence, that trial counsel was constitutionally deficient in his preparation for trial.*

Applicant asserts that trial counsel's admitted lack of preparation resulted in multiple errors at trial. He states that counsel's "failure to investigate my case did not allow for the development of any viable defense theory and limited him to defense by cross-examination." Applicant argues that his attorney's "failures and omissions must be deemed deficient and allow a presumption of prejudice." He argues that his counsel's failure to prepare amounted to ineffective assistance under either or both *Strickland* and *Cronic.*

Counsel's function "is to make the adversarial testing process work in the particular case."[27] Accordingly, competent counsel must "conduct independent legal and factual investigations sufficient to enable him to have a firm command of the case and the relationship between the facts and each element of the offense."[28] "When trial counsel does not conduct a complete investigation, his conduct is 'reasonable for purposes of ineffective assistance of counsel only to the extent that reasonable professional judgments support the limitations on investigation.'"[29] A particular choice not to investigate should be judged for its reasonableness under all of the circumstances, applying a "heavy measure of deference"

---

[27] *Ex parte Niswanger*, 335 S.W.3d 611, 615 (Tex. Crim. App. 2011) (quoting *Strickland*, 466 U.S. at 690).

[28] *Id.*

[29] *Ex parte Napper*, 322 S.W.3d 202, 246 (Tex. Crim. App. 2010) (quoting *Strickland,* 466 U. S. at 687).

to counsel's judgments.[30] A breach of the duty to investigate may result in a finding of ineffective assistance "where the result is that any viable defense available to the accused is not advanced."[31]

On the morning of trial, counsel sought a continuance. In presenting that motion, he said that he had not prepared to try the case because he believed that applicant would accept the State's favorable plea offer, and he did not want that offer revoked:

> My goal with this case, at least with the psychology of plea negotiations with the State is, number one, not to ask for a discovery response, and, number two, not to get ready for trial, because in getting ready for trial, I start to call people, that gets back to the District Attorney's office, they find out I'm getting ready to go [to] trial, and then the plea offer that's below the minimum disappears.[32]

Counsel stated, "I'm not ready to try this case. I think that a trial at this point would be a rubber stamp. The State would call in their witnesses, the jury would deliberate about an hour, and he would be convicted." In denying the motion for continuance, the trial court noted that (1) the case had been pending for over a year; (2) it had been set for trial on numerous occasions, and (3) the parties were twice notified, in open court, of the current setting. A jury was empaneled, and then the court adjourned for the day. The next morning, trial counsel acknowledged, and the trial court found, that the State "has either complied with

---

[30]*Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006) (quoting *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003)); *Salinas v. State*, 274 S.W.3d 256, 261 (Tex. App.–Houston [14 Dist.] 2008, pet. ref'd).

[31] *Ex parte Ybarra*, 629 S.W.2d 943, 946 (Tex. Crim. App. 1982).

[32] The State had made a fifteen-year plea offer, which was five years below the minimum punishment possible with an enhancement paragraph and a "drug-free zone" finding.

the [trial court's] standard discovery order or will comply with the standard discovery order."

In his affidavit responding to applicant's writ allegations, trial counsel stated that he believed the State's plea offer was a good one and that Mr. Hatcher should have accepted that offer, but "[s]imply because I did not ask for a discovery order, does not mean that I did not prepare for and was not prepared for trial."[33]

Trial counsel then set out what he did in preparing for trial: he met with his client five times, met with prosecutors four times, and had a number of conversations with the federal investigator who was gathering evidence for a possible federal indictment against applicant. He obtained, via informal discovery, everything that formal discovery would have uncovered, and then some,[34] and he did so "without losing the State's 15 year offer." Counsel explained that if he had asked for discovery, the offer would have gone up to 20 years.

The trial judge detailed these actions in his findings,[35] and he also found that

Counsel's questioning of witnesses, his evidentiary objections, and his

---

[33] This statement contradicts counsel's statement at trial when he asked for a continuance, but, given the evidence in the record, we agree with the trial judge that this is the more factually accurate statement of counsel's actual level of preparedness.

[34] Trial counsel explained that, in meeting with prosecutors, he was able to examine witness statements and police reports that he would not have been entitled to under a formal discovery order. He also "had numerous conversations with [a federal investigator] investigating the same offense as alleged in this state case." He was "able to find out a substantial amount of the state's investigation from [him] without obtaining a discovery response from the District Attorney's Office thereby losing the 15-year offer."

[35] The trial judge specifically mentioned, among other things, that trial counsel obtained copies of the photos, the search warrant, the property and evidence document, the witness list, the diagram and satellite photo of applicant's house, as well as applicant's oral statements, pen packet and rap sheet.

arguments to the court and judge were logical, cogent, and effective. During the trial and punishment hearing, counsel seemed familiar with the facts and the law pertaining to the charge. . . . Applicant's trial counsel was prepared for trial and the punishment hearing.

The trial judge's findings are supported by the record. In spite of counsel's desire for a continuance for more preparation time, trial counsel did prepare for trial. He did so in a manner that kept the advantageous plea offer in place. When applicant rejected this plea despite counsel's advice, his attorney did a reasonable job with the hand he was dealt. Applicant does not point to any viable defenses that more investigation would have uncovered. Though no obvious theory of defense was available, applicant's decision to go to trial was honored, and his attorney held the prosecution to its heavy burden of proof.[36] Even now applicant does not suggest a more successful strategy. As a reviewing court, we will not second-guess counsel's reasonable trial strategy. But even if we assumed that counsel's actions fell below the objective standard of reasonableness, applicant has not established that a different result likely would have occurred had counsel acted differently. We cannot, therefore, conclude that trial counsel's actions prejudiced applicant, much less do they call for presumed prejudice under *Cronic* because those actions are not so deficient as to equal no representation at all.[37]

---

[36] *Cronic*, 466 U.S. at 656-57 n. 19.

[37] Applicant does not claim that trial counsel's failure to prepare for trial was ineffective assistance at punishment, perhaps because applicant's thirty-year sentence was at the low end of the range available (twenty to ninety-nine years or life in prison). The punishment evidence showed that applicant was a down-on-his-luck football player rather than a career drug dealer, and that he started selling drugs only because he could not find a job because of his prior felony conviction.

2.     *Applicant has failed to prove, by a preponderance of the evidence, that trial counsel was constitutionally deficient for purportedly "opening of the door" to evidence of applicant's prior jail and prison incarceration.*

Applicant contends that trial counsel elicited from his mother that he had been in jail and prison–and so opened the door to evidence of applicant's prior jail and prison incarceration.[38]

Counsel's questioning of applicant's mother, Shelah Hatcher, got off to a bad start:

Q:     Mrs. Hatcher, I've spoken with you briefly, but I'm Sam Mehaffey. I'm your son's attorney in this matter, and he's charged with possession with intent to distribute in a drug-free zone. The allegation is that this occurred on or about July 31st of 2006, and what I'm going to show you right now is a calendar, a 2006 calendar. It's got the year, the month of July, and the month of August, if that helps in anyway.
        . . .
        Your son, Nivek, how long has he lived in the Abilene area?

A:     All his life, except when he was incarcerated.

Counsel did not object, but he tried to steer the conversation back on the right track:

Q:     Okay. How old is he?

A:     25.

Q:     Okay. And he–do you remember where he was living on or about July 31st, 2006?

A:     Nivek has always lived with either me or my mother.

---

[38] A trial lawyer may perform deficiently under the first prong of *Strickland* by allowing the jury to hear prejudicial and clearly inadmissible evidence. *Robertson v. State*, 187 S.W.3d 475, 484 (Tex. Crim. App. 2006) ("in cases like this where appellant's self-defense claim rested almost entirely on his credibility, the weight of authority supports a holding that appellant's trial lawyer performed deficiently under the first prong of *Strickland* by allowing the jury to hear prejudicial and clearly inadmissible evidence because this evidence could serve no strategic value including demonstrating that appellant is not a liar.").

Later, Mrs. Hatcher gave another non-responsive and unhelpful answer: "Like I said, ever since he got out from being incarcerated, either I would see him every day or every night, you know, either going to work or getting ready for work or whatever." After some cross-examination on dates–and whether applicant took out student loans prior to his being incarcerated, trial counsel directly addressed applicant's prior prison term.

Q:     . . . Now, when your son was sent to prison, the date of that document indicates 2001. Does that sound right? Not when he got out, but when he went, 2001?

Mrs. Hatcher couldn't answer that question, but she later interjected,

A:     Like I said, he was released to Mother. He stayed at Mother's . . . . And every so often I would see him in the yard talking to his parole officer, whatever.

Mrs. Hatcher was decidedly not helpful in her unresponsive answers.

In his writ affidavit, counsel states that 1) he was trying to show that applicant was not living at the Laurel Street house at the time the search warrant was executed, but was living with his mother, 2) applicant's mother was fully aware of the scope and the type of the testimony that he was trying to elicit from her, and 3) no one "could have anticipated that she would state to the jury that her son was incarcerated." Once "the cat was out of the bag," trial counsel stated that he did everything he could to "explain the situation and to minimize the negative impact that the statement would have on the jury."

The trial court found that trial counsel did not elicit this information. This finding is clearly supported by the record. Mrs. Hatcher volunteered several non-responsive answers. Trial counsel did not object to these statements as non-responsive, as he could have, but a

non-responsive answer alone does not open the door to a full inquiry by the State of a defendant's prior experience with the criminal justice system.[39] And the State did not attempt any such inquiry. We will not second-guess trial counsel's decision to "explain the situation" rather than object,[40] but even if we assumed that counsel's handling of Mrs. Hatcher fell below the objective standard of reasonableness, applicant has not established that the jury might well have found him not guilty had counsel acted differently. We therefore cannot conclude that trial counsel's actions resulted in any prejudice to applicant.

3.     *Applicant has failed to prove, by a preponderance of the evidence, that there is a reasonable probability that the outcome of his trial would have been different but for trial counsel's failure to request an accomplice-witness instruction.*

Applicant contends that trial counsel should have requested an accomplice-witness instruction on Brandi Hyke. Had the jury been so instructed, he argues, there is a reasonable probability that he would have been found not guilty.

Under Article 38.14, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."[41] A witness who is indicted for the same or a lesser-included offense as the accused is an accomplice as a matter of law. When there is no doubt that a witness is an

---

[39] *Prescott v. State*, 744 S.W.2d 128, 132 (Tex. Crim. App. 1988).

[40] Had applicant's attorney objected to Mrs. Hatcher's unresponsive answers, the jury might well have thought he was trying to cover up applicant's criminal history.

[41] TEX. CODE CRIM. PROC. art. 38.14.

accomplice as a matter of law, the trial judge must instruct the jury accordingly.[42]

Corroborating evidence under Article 38.14 need not be sufficient, standing alone, to prove that a defendant committed the offense. "All that is required is that there is *some* non-accomplice evidence *tending* to connect the defendant to the offense."[43]

Defense counsel's failure to request an instruction on accomplice-witness testimony may constitute ineffective assistance of counsel.[44]

Before applicant's trial, Ms. Hyke pled guilty to the same offense applicant was on trial for; she was, therefore, an accomplice as a matter of law.

In his affidavit responding to applicant's writ allegation, trial counsel wrote:

I did not request an accomplice witness instruction. I believed that [Ms. Hyke's] testimony was extremely believable and credible to the jury. I did not believe that requesting an accomplice instruction was beneficial because it would bring attention to her testimony. The accomplice instruction, in my opinion, gives the jury the impression that they can convict if the jury finds that there is corroborating evidence, without looking at beyond a reasonable doubt. [Ms. Hyke's] testimony was corroborated by the fact that the drugs were found in the house when the search warrant was executed, and Mr. Hatcher was specifically named in the search warrant. This was not a case in which the co-defendant was the sole witness and supplied all of the evidence regarding the offense. The drugs were found in the house and Mr. Hatcher was specifically named in the warrant.

---

[42] *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011).

[43] *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007).

[44] *See Ex parte Zepeda*, 819 S.W.2d 874, 877 (Tex. Crim. App. 1991) (per curiam) ("Given the state of the evidence, which depended so heavily on the accomplice testimony, and given that Pruneda and Gamboa were accomplices as a matter of law because they had been indicted, counsel should have requested an instruction on accomplice witness testimony. This omission was an error rendering counsel's performance deficient.").

The trial court found that trial counsel intentionally decided not to request an accomplice-witness instruction; "this was not an oversight on his part." The trial court also made findings that listed the "non-accomplice evidence connecting applicant to the offense."

Intentional or not, trial counsel's failure to request an accomplice-witness instruction on the State's star witness was deficient conduct. Regardless of whether counsel deemed Ms. Hyke believable, she was an accomplice as a matter of law, and, under Article 38.14, a conviction could not be had upon her testimony unless it was corroborated by other evidence. Applicant was entitled to the instruction, and it could only have benefitted the defense.[45] Nonetheless, that failure did not create a reasonable probability that the result of the trial would have been different had counsel asked for an accomplice instruction,[46] because ample other evidence "tended to connect" applicant to the offense:

- Applicant was present when the search was conducted; he opened the door before the officers executing the warrant had a chance to knock;

- Applicant was in close proximity to–and had access to–the contraband; it was hidden in the living room of his house;

- Other contraband or drug paraphernalia was present; electronic scales and baggies were found in plain view in the kitchen; trace cocaine and prescription

---

[45] *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009) ("Because the State's case for conviction depended heavily on the testimony of Justin Schimpf, who was an accomplice witness as a matter of law, trial counsel should have requested an instruction on accomplice-witness testimony, and his failure to do so rendered his performance objectively deficient").

[46] *Compare id.* (counsel's failure to request an instruction on the law of accomplice-witness testimony constitutes ineffective assistance of counsel according to the standard set forth in *Strickland*; "the error prejudiced applicant to the extent that there is a reasonable probability that, but for the error, the result of the proceedings would be different.").

medications were found in one of the bedrooms;

- Applicant had the right to possess the place where the drugs were found; the notebook found at the house indicated that applicant, Ms. Hyke, and Mr. Fuentes were roommates who split the bills; the columns were headed "Tony," "Brandi," and "Nivek";

- The drugs were found in an enclosed place; they were hidden in a newspaper stacked with other newspapers in the living room;

- Applicant's conduct during the search showed consciousness of guilt; Agent Belver testified that applicant and Mr. Fuentes, though handcuffed, "were talking amongst themselves and laughing.  They seemed to be not worried about the current situation.  They seemed to be having a good time."  When she eventually found the well hidden-cocaine, "They did stop laughing"; and

- The large quantity and high quality of the cocaine found,[47] (and the fact that there was scant evidence that the roommates themselves were users) suggested that cocaine was being sold from, rather than used at, the house.

Because applicant's "mere presence"[48] was coupled with other "suspicious circumstances," the accomplice-witness corroboration was sufficient.[49]  The strength of the non-accomplice evidence–some seven "affirmative links"–meets the flexible harmless-error analysis for the omission of an accomplice-witness instruction.[50]  Although trial counsel's decision not to

---

[47] Agent Pope testified that they found about $1,600 worth of powder cocaine hydrochloride. He said that the cocaine probably came from a "kilo brick," and was probably sold in "eight balls" rather than single doses, making this a "medium" level operation.

[48] *Golden v. State*, 851 S.W.2d 291, 294 (Tex. Crim. App. 1993) ("It is well-settled that mere presence alone of a defendant at the scene of a crime is insufficient to corroborate accomplice testimony.").  *See also Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).

[49] *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984).

[50] *See Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006) (setting out a non-exclusive set of possible "affirmative links" that Texas courts have recognized as sufficient, either singly or in combination, to establish a person's possession of contraband).

request the instruction was unreasonable, applicant has not established that a different result

likely would have occurred had trial counsel requested it.  We therefore cannot conclude that

trial counsel's failure resulted in prejudice or called for presumed prejudice under *Cronic*.

4.      *Applicant has failed to prove, by a preponderance of the evidence, that his trial counsel was constitutionally deficient for delivering a concession-laden closing argument.*

Applicant claims that his counsel made a constitutionally deficient closing argument

when he conceded that applicant was a drug dealer[51] and that Brandi Hyke was credible.[52]

Applicant argues that trial counsel's closing argument "erased reasonable doubt."

The right to effective assistance encompasses closing arguments.[53] The type of

closing argument to make is an inherently tactical decision "based on the way a trial is

unfolding, the trial strategy employed, the experience and judgment of the defense attorney,

---

[51] Trial counsel described applicant as a drug dealer numerous times:

- "Is Lemmuel Hatcher a drug dealer? Is Lemmuel Hatcher a drug dealer? Well, the answer is probably so. Okay. Probably so."
- The "evidence, most of which is uncontroverted, is, yes, [Applicant] was dealing drugs. Yes, he's a drug dealer."
- Applicant "is the bigger of the two drug dealers."
- "Now we can assume that either Mr. Hatcher, or Mr. Fuentes, or both, more likely than not, were going to sell pieces of [the cocaine] for money? Yes. Absolutely. That's what it looks like. But do we know that beyond a reasonable doubt? Absolutely not."

[52] "And I'm not saying that [Ms. Hyke is] lying all the time, because I don't think that she created out of thin air 175 deliveries of cocaine. Okay. I really don't think that she pulled that out of thin air . . . ."

[53] *Yarborough v. Gentry*, 540 U.S. 1, 5-6, (2003) (per curiam); *Bell v. Cone*, 535 U.S. 685, 701-02 (2002); *Herring v. New York*, 422 U.S. 853, 865 (1975).

and other factors."[54]   The points of the charge that defense counsel decides to emphasize

in argument are likewise a matter properly left to the realm of trial strategy.[55] But "counsel

has wide latitude in deciding how best to represent a client, and deference to counsel's

tactical decisions in his closing presentation is particularly important because of the broad

range of legitimate defense strategy at that stage."[56] Judicial review of an attorney's

summation is therefore highly deferential,[57] and we will second-guess that strategy only if

the attorney's actions are without any plausible basis.[58]

The record reflects that trial counsel's strategy in closing was to focus on how it was

impossible to know whether the specific drugs found when the search warrant was executed

were applicant's.

> This isn't a delivery case.   It's a possession with intent to deliver case, and
> the question that you have before you today is:  Whose cocaine is it?  Not did
> Mr. Hatcher have cocaine at some point that day, the day before, and the day
> before, and the day before.  Not did Mr. Hatcher sell cocaine the day before,
> the day before, the day before, and the day before that.  But did he possess
> this cocaine right here in my hand with the intent to deliver it?  And unless
> you find beyond a reasonable doubt that he possessed this cocaine, the chunky
> cocaine in my hand, with the intent to deliver it, then you have no choice but

---

[54] *Taylor v. State*, 947 S.W.2d 698, 704 (Tex. App.–Fort Worth 1997, pet. ref'd).

[55] *Tong v. State*, 25 S.W.3d 707, 713 (Tex. Crim. App. 2000).

[56] *Yarborough v. Gentry*, 540 U.S. at 1.

[57] *Id.* at 6.

[58] *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002) ("Under *Strickland*, the defendant must prove, by a preponderance of the evidence, that there is, in fact, no plausible professional reason for a specific act or omission.").

to render a not guilty verdict, as counter-intuitive as that is.

The record also reflects that trial counsel vacillated, in his argument, between saying that Ms. Hyke was credible, that she was not credible, or that her credibility did not matter.[59]

Counsel explains in his affidavit that he argued the way that he did because "[a]nyone that was in the courtroom would have seen that Ms. Hyke was extremely credible."

> Ms. Hyke testified about Mr. Hatcher selling drugs in the past, but she did not testify to him selling the drugs that were in evidence. Ms. Hyke was an extremely credible and believable witness. I could not argue to the jury that they should believe Ms. Hyke was a liar and have any credibility with them whatsoever. I was attempting to show the jury how they could believe Ms. Hyke's testimony and still find Mr. Hatcher not guilty. . . . . My job at that point was to attempt to give the jury the license and the logical steps to believe/understand Ms. Hyke and still find Mr. Hatcher not guilty.

The trial court found, in part, that,

> By conceding that Applicant was a drug dealer, yet arguing that the State had failed to prove Applicant possessed the specific alleged controlled substance which was in evidence, trial counsel was trying to get the jury to take its oath seriously. He was trying to get the jury to narrow its focus on the "cocaine marked in a little bag with the No. 8 on it."

---

[59] Counsel's remarks during closing argument included the following:

- "And by the way, do I consider Brandi Hyke a credible witness? No."
- "I think we need to take a look at Ms. Hyke's lack of credibility. And I'm not saying that she's just lying all the time . . . ."
- "I don't think Hyke's credibility, for the most part, whether or not she's lying matters that much in this case unless she's lying about saying that 175 drug transactions existed . . . ."
- "Okay. At least consider that this is a scared young girl that got all wrapped up in this."
- "So not with–getting past the fact that she's lying and she admitted to lying in her statement, use a little bit of common sense here. And when numbers and the math don't add up based on Brandi's testimony, or Ms. Hyke's testimony, keep in mind that unlike Mr. Hatcher and unlike Mr. Fuentes she didn't do this for a living."

Trial counsel reasonably used the unorthodox approach of conceding that Applicant was a drug dealer because to do otherwise could have caused him to lose credibility with the jury.   The evidence against Applicant was compelling; therefore, it was necessary for trial counsel to use the somewhat unusual strategy of conceding obvious things, but asking the jury to focus on the specific controlled substance that was in evidence.

These findings are supported by the record.  Counsel's summation had a "plausible basis" in the record.  Counsel acted with undivided allegiance for a client who demanded a trial despite extensive evidence of his guilt and no plausible defense.  It is hard to make a silk purse out of a sow's ear.

A review of counsel's entire closing argument demonstrates that he adequately discussed the State's burden of proof, the weaknesses in the State's evidence, and the defense theory. By candidly acknowledging applicant's status as a drug dealer, trial counsel might have built credibility with the jury and persuaded it to focus on the relevant issue in the case–whether applicant possessed the very drugs in evidence in this case.[60]   The argument dove-tailed nicely with his cross-examination of Agent Belver about her deliberate

---

[60] *See Yarborough v. Gentry*, 540 U.S. 1, 9 (2003) (per curiam) ("The Ninth Circuit singled out for censure counsel's argument that the jury must acquit if Gentry was telling the truth, even though he was a 'bad person, lousy drug addict, stinking thief, jail bird.'  It apparently viewed the remark as a gratuitous swipe at Gentry's character.  While confessing a client's shortcomings might remind the jury of facts they otherwise would have forgotten, it might also convince them to put aside facts they would have remembered in any event. This is precisely the sort of calculated risk that lies at the heart of an advocate's discretion. By candidly acknowledging his client's shortcomings, counsel might have built credibility with the jury and persuaded it to focus on the relevant issues in the case.").

decision not to have the bag containing the cocaine dusted for fingerprints.[61] The strategy ultimately failed, but we do not judge a strategy in hindsight.[62] Trial counsel's closing argument was actually not that unorthodox.[63] And counsel's concession that Brandi Hyke was right about applicant being a drug dealer represents neither ineffective assistance of trial counsel under *Strickland*,[64] nor "a paradigmatic example of the sort of breakdown in the

---

[61] In the cross-examination of the agent, counsel stated, "If Brandi Hyke's prints are on there or if Jose Feuentes' prints are on there, well, then I'm going to say, 'It's not my client.' Lemmuel Hatcher's prints are not on there. But not printing the bag you get to pursue whoever you want in this case regardless of who the drugs actually belong to or regardless of who actually possesses the drugs, that by not printing them you leave your options open to pursue everybody . . . ."

[62] *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Saylor v. State*, 660 S.W.2d 822, 823-24 (Tex. Crim. App. 1983) (Defense counsel closing argument–"I'm not fool enough, and I know you're not fool enough either for me to stand up here and tell you that he's not guilty of theft because he is. And he's guilty of theft between $200 and $10,000 and that's what they proved up, a value of over $200 but less than $10,000."–was reasonable where appellant was caught with stolen goods; "since the jury was not charged on the offense of theft, defense counsel was arguing that appellant could not be convicted in this case. Defense counsel was merely emphasizing that possession of stolen goods alone was not enough to convict appellant for burglary. The fact that this trial strategy was not successful does not mean that counsel was ineffective.").

[63] See note 64, *infra*; *see generally,* Gregory G. Sarno, Annotation, *Adequacy of Defense Counsel's Representation of Criminal Client Regarding Argument*, 6 A.L.R. 4th 16 §§ 20-21 (collecting cases addressing whether defense counsel's making an unfavorable disclosure or concession during closing argument supports a finding of ineffective assistance).

[64] *See Hathorn v. State,* 848 S.W.2d 101, 118 (Tex. Crim. App. 1992) (rejecting contention that capital murder trial counsel relieved the State of a major portion of its burden of proof when he told the jurors that appellant was guilty of murder: "defense counsel's conduct in conceding appellant's guilt in an apparent attempt to get the jury to find appellant guilty of a lesser offense can reasonably be explained as trial tactic. Although it was apparently unsuccessful, it was logical when the overwhelming strength of the State's case was considered. We do not believe that appellant has met his burden of proof as to either of the *Strickland* prongs with this example."); *Brown v. State*, 866 S.W.2d 675, 681 (Tex. App.–Houston [1st Dist.] 1993, pet. ref'd) (counsel was not ineffective for conceding, in closing argument, that defendant was a "dope head"; counsel urged the jury to consider whether defendant was guilty of only some lesser drug offense, challenged credibility of undercover officer's testimony, and argued that defendant should be helped as user rather than

adversarial process that triggers a presumption of prejudice" under *Cronic*.[65]

## B. Applicant has failed to prove, by a preponderance of the evidence, that appellate counsel was constitutionally ineffective.

Applicant contends that appellate counsel should have argued that the non-accomplice evidence was insufficient. To sustain this claim, applicant must show that "(1) counsel's decision not to raise a particular point of error was objectively unreasonable, and (2) there is a reasonable probability that, but for counsel's failure to raise that particular issue, he would have prevailed on appeal."[66]

We have already found ample non-accomplice evidence that tends to connect

---

convicted as pusher). *See also United States v. Short*, 181 F.3d 620, 624-25 (5th Cir. 1999) (defense counsel's closing argument, admitting defendant was in the drug trade, did not amount to ineffective assistance of counsel; evidence was overwhelming that defendant was involved in the drug trade; counsel took reasonable strategic approach of trying to establish his credibility with the jury and enhance the possibility that the jury would accept his arguments on the more serious kingpin and murder counts); *United States v. Williamson*, 53 F.3d 1500, 1511 (10th Cir. 1995) (counsel's closing statements acknowledging defendant's admission of involvement in distributing drugs to undercover officers did not amount to admission of guilt of involvement in drug conspiracy and thus did not show ineffective assistance of counsel); *United States v. Simone*, 931 F.2d 1186, 1195 (7th Cir. 1991) ("concessions by Bosko's counsel [that defendant was a cocaine dealer] were bold and blatant. However, our examination of the trial transcript reveals that the admitted facts arose from indisputable evidence and credible testimony. And the concessions made by Mr. Muslin about the defendant's activities concerned the drug trafficking that Bosko did only on his own or with Amanda Roland, his girlfriend, who entered a guilty plea. The attorney vigorously contested the most serious charges, such as conspiracy and continuing enterprise. We find this approach to be a logical trial strategy"); *Kelly v. United States*, 820 F.2d 1173, 1176 (11th Cir.1987) (given that defendant was arrested on board a boat loaded with marijuana, counsel's admission of guilt on importation charges was part of reasonable strategy to persuade jury of innocence on distribution charge).

[65] *See Williamson*, 53 F.3d at 1511 (collecting cases in which closing statements admitting guilt on the only fact issues in dispute amounted to *Cronic* error).

[66] *Ex parte Miller*, 330 S.W.3d 610, 623-24 (Tex. Crim. App. 2009) (internal quotation marks and footnotes omitted).

applicant to this particular offense, so there is no reasonable probability that, but for appellate counsel's failure to raise this sufficiency issue, he would have prevailed on appeal.

IV.

The Sixth Amendment does not require that counsel do that which is "impossible or unethical."[67]   If there is no real defense to the charge, trial counsel "cannot create one and may disserve the interests of his client by attempting a useless charade."[68] At the same time, even if "no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt."[69] Counsel held the State to that burden in this case.

We adopt the trial court's findings of fact and deny relief on applicant's claims.

Delivered: December 14, 2011
Do Not Publish

---

[67] *Cronic*, 466 U.S. at 656 n.19.

[68] *Id.*

[69] *Id.*