**Opinion filed December 29, 2017**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-16-00009-CR & 11-16-00011-CR

_____

## IRMA MUNGUIA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law No. 2**
**Taylor County, Texas**
**Trial Court Cause Nos. 2-589-15 & 2-470-14**

## M E M O R A N D U M  O P I N I O N

The jury convicted Irma Munguia of the misdemeanor offenses of resisting arrest, search, or transportation and interference with public duties in Cause Nos. 2-470-14 and 2-589-15, respectively, and the trial court assessed her punishment at confinement for a term of thirty days in jail for each conviction and a fine of $100 for resisting arrest. *See* TEX. PENAL CODE ANN. §§ 38.03, 38.15 (West 2016). The trial court ordered that the two sentences run concurrently. The trial court suspended

the confinement portion of Appellant's sentences and placed her on community supervision for a period of nine months. Appellant presents four issues on appeal. We affirm.

In Appellant's first issue, she asserts that the trial court erred when it admitted a recording of a 9-1-1 call into evidence in violation of her right to confront witnesses against her. In her second issue, Appellant argues that the evidence is insufficient to sustain her convictions because the officer did not tell Appellant that she was under arrest and because any force she used occurred before her arrest. In her third issue, Appellant argues that her convictions violate double jeopardy. In Appellant's fourth issue, she asserts that her trial counsel provided ineffective assistance because he failed to object to the admission of the recording of the 9-1-1 call, failed to call the witness who called 9-1-1 to testify, and failed to raise a double jeopardy claim.

On June 10, 2013, Officer James Cummings, a game warden with Texas Parks and Wildlife, heard yelling while he pumped gas at a gas station. Officer Cummings used his binoculars to look toward the place from which the yelling was coming. Officer Cummings testified that he could see "[s]ome shoving and . . . somebody hitting somebody with a cane" in a parking lot. Officer Cummings finished pumping gas and drove to the parking lot, where he saw Appellant and her adult son.

Officer Cummings arrived at the parking lot in his patrol vehicle—a Ford F-150 that had lights on it and the words "State Game Warden" on the side. He was wearing his badge and his uniform, which bore patches that read "Law Enforcement." He got out of his vehicle and identified himself as a police officer to Appellant and her son. He testified that he put Appellant's son in handcuffs, to "safely control the situation," and that Appellant had started to walk away.

2

Officer Cummings then placed Appellant's son in his patrol vehicle and drove toward Appellant.

When Officer Cummings pulled up next to Appellant, she stopped and Officer Cummings got out of his vehicle. Appellant told Officer Cummings that she and her son had gotten into an argument about finances. Officer Cummings explained to Appellant that what he had seen could be domestic violence and instructed her to return to her nearby vehicle so that he could investigate the situation. Officer Cummings testified that Appellant began to walk toward her vehicle.

As Officer Cummings approached his patrol vehicle to speak with Appellant's son, he saw Appellant turn around and begin to walk back toward his patrol vehicle. Officer Cummings testified that he walked up to Appellant and that she "start[ed] trying to step around" him and said, "I need to talk to my son." Officer Cummings stepped in front of Appellant to prevent her from walking around him. Officer Cummings further testified that Appellant then "shouldered" him in a way that resembled "a hockey check" and hit him in the leg with her cane. Officer Cummings grabbed Appellant, placed her on the ground, and attempted to place her under arrest because he believed that she had committed the offense of assault of a public servant.

Officer Cummings realized that he did not have another pair of handcuffs on his belt and that he needed to obtain more handcuffs from his patrol vehicle. Officer Cummings told Appellant to "[s]tay on the ground" while he retrieved handcuffs. After Officer Cummings obtained more handcuffs and walked around his patrol vehicle, he saw that Appellant had stood up and had grabbed a railing on his vehicle. Officer Cummings testified that Appellant then "lunged at [him]" and "grabbed" him in a way that resembled "a bear hug." As Officer Cummings

3

attempted to place Appellant in handcuffs, Appellant reached up with her hand and placed it on Officer Cummings's service weapon and began to pull on it. Officer Cummings testified that Appellant pulled on his weapon three separate times. He also testified that, as he attempted to place Appellant in handcuffs, she "grabbed that railing again and she wouldn't let go." Officer Cummings eventually placed Appellant in handcuffs.

At trial, Appellant testified that she did not know that Officer Cummings was a member of law enforcement. She said that she thought of a game warden as "a meter maid, somebody who wrote tickets out" and dealt with animals. Appellant also testified that she did not know that she was under arrest.

In her first issue, Appellant argues that the trial court erred when it admitted a recording of a 9-1-1 call made by a witness who did not testify at trial—in violation of her constitutional rights to confront witnesses against her under the United States Constitution and the Texas constitution. *See* U.S. CONST. amends. VI, XIV; *see also* TEX. CONST. art. I, § 10. "To preserve error on Confrontation Clause grounds, a defendant must object at trial as soon as the basis for that objection becomes apparent." *Tran v. State*, No. 14-15-000938-CR, 2017 WL 3158948, at \*3 (Tex. App.—Houston [14th Dist.] July 25, 2017, no pet.) (mem. op., not designated for publication); *see* TEX. R. APP. P. 33.1. A defendant's failure to object to a Confrontation Clause error at trial waives the complaint on appeal. *See Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000) (objection on grounds other than Confrontation Clause did not preserve Confrontation Clause complaint); *see also Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (holding that failure to articulate "that the Confrontation Clause demanded admission of the evidence" foreclosed trial court's opportunity to rule on that issue and resulted in waiver of issue on appeal).

Because Appellant did not object to the admission into evidence of the recording of the 9-1-1 call on Confrontation Clause or other grounds, the trial court did not have an opportunity to rule upon Appellant's Confrontation Clause complaint. Therefore, Appellant has not preserved her Confrontation Clause complaint for our review. *See* TEX. R. APP. P. 33.1. Appellant's first issue is overruled.

In Appellant's second issue, she argues that the evidence was insufficient to sustain her conviction for the offense of resisting arrest, search, or transportation. To prove the misdemeanor offense of resisting arrest under Section 38.03, the State must show that the defendant intentionally prevented or obstructed a person whom he knows is a peace officer from effecting an arrest, search, or transportation of the actor or another by the use of force against the peace officer. PENAL § 38.03(a).

Appellant argues on appeal that, because "there was no evidence submitted that Appellant was ever actually told she was either under arrest or being detained," she could not have known that she was under arrest and, thus, could not have intentionally resisted arrest. Appellant also argues that any force that she used against Officer Cummings occurred before he attempted to arrest her. Therefore, Appellant argues, the jury could not have found her guilty.

We review the sufficiency of the evidence, whether denominated as a legal or a factual sufficiency claim, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319;

*Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *Brown v. State*, 381 S.W.3d 565, 573 (Tex. App.— Eastland 2012, no pet.) (citing *Jackson*, 443 U.S. at 314, 318 n.11, 320).

Appellant argues on appeal that the evidence presented was insufficient to show that Appellant intentionally prevented Officer Cummings from arresting her because she did not know that she was being arrested. Appellant maintains that she was unaware that she was under arrest and, therefore, could not have resisted arrest under the statute. Additionally, she argues that, because Officer Cummings "only formed the intent to arrest her after her alleged use of force against him, it would be factually impossible under the evidence as presented for her to have committed the offense of Resisting Arrest as defined by the statute."

"To establish that an officer was in the process of effecting an arrest, the State must prove that the officer had a preexisting intent to arrest the defendant and took some action pursuant to that intent." *Menjivar v. State*, No. 11-13-00378-CR, 2015 WL 7185532, at *2 (Tex. App.—Eastland Nov. 12, 2015, no pet.) (mem. op., not designated for publication). Based on his own testimony, Officer Cummings decided to arrest Appellant only after she "shouldered" him and struck him on the leg. Thus, Officer Cummings did not intend to arrest Appellant when he initially arrived at the scene; he intended to arrest her only after she assaulted him.

The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given their testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007). As such, the jury was entitled to accept or reject any

or all of the testimony of any witness. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). Furthermore, the jury was entitled to draw reasonable inferences from the evidence. *Jackson*, 443 U.S. at 319. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and, therefore, defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Officer Cummings testified that he arrived at the scene in his patrol vehicle, that he was wearing his uniform and badge, and that he identified himself as a police officer to Appellant and her son. Officer Cummings also testified that he attempted to arrest Appellant after she struck him because he believed that she had committed the offense of assault of a public servant and that he did so by "grabb[ing] her and . . . plac[ing] her on the ground." Officer Cummings further testified that, after he went to his vehicle to obtain more handcuffs and told Appellant to stay on the ground, Appellant stood up, "lunged" at Officer Cummings, "grabbed him," and put her hand on his service weapon and repeatedly pulled on it. He also testified that Appellant grabbed the railing on his patrol vehicle as he attempted to place her in handcuffs. We note that evidence that a person pulls against an officer, twists or squirms to thwart the officer's movements, or struggles against an officer is sufficient to show that the person used force against the officer. *Menjivar*, 2015 WL 7185532, at \*3; *see Pumphrey v. State*, 245 S.W.3d 85, 89–92 (Tex. App.—Texarkana 2008, pet. ref'd).

Here, the jury could have inferred that Officer Cummings was effecting an arrest when he placed Appellant on the ground after she struck him. Further, the jury could have rejected Appellant's testimony and reasonably inferred that Appellant knew that Officer Cummings was a police officer. Finally, the jury could have reasonably inferred that Appellant used force against Officer Cummings after

7

he attempted to arrest her. We have reviewed the evidence in the light most favorable to the verdict, and we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant intentionally prevented Officer Cummings, a person she knew to be a peace officer, from effecting an arrest of Appellant by using force against Officer Cummings. Appellant's second issue is overruled.

In her third issue, Appellant argues that her convictions for resisting arrest, search, or transportation and interference with public duties constitute a double jeopardy violation. Under the U.S. Constitution, the Double Jeopardy Clause provides, in part, that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. "The Double Jeopardy Clause protects criminal defendants from three things: 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense." *Ex parte Milner*, 394 S.W.3d 502, 506 (Tex. Crim. App. 2013) (citing *Brown v. Ohio*, 432 U.S. 161, 164–65 (1977)).

We note at the outset that Appellant did not raise her double jeopardy claim in the trial court. Because of the fundamental nature of the double jeopardy protections, however, a double jeopardy claim may be raised for the first time on appeal or on collateral attack if two conditions are met: (1) the undisputed facts show that the double jeopardy violation is clearly apparent on the face of the record and (2) enforcement of the usual rules of procedural default serves no legitimate state interest. *See Gonzalez v. State*, 8 S.W.3d 640, 643–46 (Tex. Crim. App. 2000). In this case, the record is fully developed in order to determine whether Appellant's double jeopardy protections were violated, and no legitimate state interests would be served if we did not address Appellant's claim. *See Ex parte Denton*, 399 S.W.3d

540, 544–45 (Tex. Crim. App. 2013). Therefore, we will review the merits of the double jeopardy issue. *See Gonzalez*, 8 S.W.3d at 643.

The first step in a double jeopardy challenge is to determine whether resisting arrest, search, or transportation and interference with public duties are the "same offense." *See Bigon v. State*, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008). When multiple punishments arise out of one trial, we begin our analysis with the *Blockburger* test. *Id.*; *see Blockburger v. United States*, 284 U.S. 299 (1932). "Under the *Blockburger* test, two offenses are not the same if one requires proof of an element that the other does not." *Bigon*, 252 S.W.3d at 370. To resolve a double jeopardy issue, we look at the elements in the charging instruments. *Id.*

Appellant was charged under two informations, and each alleged a separate and distinct offense that took place on or about June 10, 2013. The information in Cause No. 2-470-14 that charged Appellant with resisting arrest, search, or transportation alleged that Appellant "did then and there intentionally prevent or obstruct JAMES G. CUMMINGS, a person the said [Appellant] knew to be a peace officer, from effecting an arrest of the said [Appellant], by using force against said peace officer." The information in Cause No. 2-589-15 that charged Appellant with interference with public duties alleged that Appellant:

> [D]id then and there, while JAMES CUMMINGS, a peace officer, was performing a duty or exercising authority imposed or granted by law, to-wit: detaining [Appellant] and [Appellant's son] to investigate an altercation he witnessed, with criminal negligence, interrupt, disrupt, impede, or interfere with the said JAMES CUMMINGS by hitting JAMES CUMMINGS with her cane, pushing JAMES CUMMINGS with her shoulder, and trying to tackle JAMES CUMMINGS and by grabbing JAMES CUMMINGS holstered weapon.

In comparison, the two charges are similar, but not the same. In order to obtain a conviction for resisting arrest, search, or transportation, the State must prove

that Appellant did intentionally, with force, "prevent or obstruct" Officer Cummings from arresting her and that Appellant knew Officer Cummings was a peace officer. On the other hand, in order to obtain a conviction for interference with public duties, the State must prove that Appellant did, with criminal negligence, "interrupt, disrupt, impede, or interfere with" Officer Cummings while he attempted to detain Appellant and her son in order to investigate an altercation that he witnessed. Under a strict application of the *Blockburger* test, the two offenses have differing elements and, therefore, would not be the same offense. However, the *Blockburger* test is a rule of statutory construction and is not the exclusive test to determine whether the two offenses are the same. *Bigon*, 252 S.W.3d at 370.

In *Ervin v. State*, the Court of Criminal Appeals provided a nonexclusive list of factors to consider when analyzing a multiple-punishment claim. 991 S.W.2d 804, 814 (Tex. Crim. App. 1999). Those factors include whether the offenses are contained within the same statutory section, whether the offenses are phrased in the alternative, whether the offenses are similarly named, whether the offenses have common punishment ranges, whether the offenses have a common focus or "gravamen," whether that common focus tends to indicate a single instance of conduct, whether the elements that differ between the offenses can be considered the same under *Blockburger*, and whether there is legislative history that contains an articulation of an intent to treat the offenses as the same or different for double jeopardy purposes. *Ervin*, 991 S.W.2d at 814. However, the ultimate question is whether the legislature intended to allow the same conduct to be punished under both of the offenses. *Bigon*, 252 S.W.3d at 371.

Resisting arrest, search, or transportation and interference with public duties are both in the "obstructing governmental operation" chapter under the "Offenses Against Public Administration" title of the Texas Penal Code. *See* PENAL ch. 38

10

(West 2016 & Supp. 2017). However, they are not phrased in the alternative, and there is no language in either statute that suggests that the legislature intended the two offenses to be phrased in the alternative. *See Ex parte Benson*, 459 S.W.3d 67, 78–79 (Tex. Crim. App. 2015). Because resisting arrest, search, or transportation and interference with public duties are not phrased in the alternative, this factor is not dispositive in this case. *Bigon*, 252 S.W.3d at 371.

Additionally, the offenses are not similarly named. *See Ex parte Benson*, 459 S.W.3d at 79 (offenses are similarly named if they share a common word in the title); *see also Garfias v. State*, 424 S.W.3d 54, 60–61 (Tex. Crim. App. 2014) (holding that aggravated robbery by threat and aggravated assault causing bodily injury were not named similarly). Furthermore, the two offenses have different punishment ranges. Resisting arrest, search, or transportation is a Class A misdemeanor and carries a punishment range of up to one year in prison, with a possibility of a fine up to $4,000. PENAL §§ 12.21, 38.03(c). On the other hand, interference with public duties is a Class B misdemeanor and carries a punishment range of up to 180 days in prison, with a possibility of a fine up to $2,000. *Id.* §§ 12.22, 38.15(b).

The focus, or "gravamen" of the two offenses is a key factor in the *Ervin* analysis. *Garfias*, 424 S.W.3d at 59. Here, each offense has a different gravamen. The gravamen of the offense of resisting arrest is the use of force to prevent an arrest of oneself. To the contrary, the gravamen of the offense of interference with public duties is the interference with *any* duty a peace officer has under law. The elements of resisting arrest, search, or transportation and interference with public duties are not the same under *Blockburger*, and we find no legislative history that indicates an intent to treat resisting arrest, search, or transportation and interference with public duties as the same offense. Although the allowable units of prosecution could be the

11

same, in this case there were two separate units of prosecution: Appellant's resistance to her own arrest and Appellant's interference with Officer Cummings's detainment of her and her son—including before Officer Cummings decided to arrest Appellant—in order to investigate a possible crime that he witnessed. Because Appellant was not punished twice for the same offense, her conviction of and punishment for both resisting arrest, search, or transportation and interference with public duties do not violate the Double Jeopardy Clause. Appellant's third issue is overruled.

In Appellant's fourth issue, she argues that her trial counsel rendered ineffective assistance of counsel when he failed to object to the introduction of a recording of a witness's 9-1-1 call into evidence, when he failed to call that witness to testify, and when he failed to raise a double jeopardy claim. To determine whether Appellant's trial counsel rendered ineffective assistance at trial, we must first determine whether Appellant has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors. *Wiggins v. Smith*, 539 U.S. 510 (2003); *Strickland v. Washington*, 466 U.S. 668 (1984); *Andrews v. State*, 159 S.W.3d 98 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999).

We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Rarely will the record on direct appeal contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Id.*

At trial, the State introduced a recording of a witness's 9-1-1 call, in which the witness described a "fight" in the parking lot and stated that a "park ranger" might need help. Appellant argues on appeal that, because the witness who called 9-1-1 was unavailable for Appellant to cross-examine, her trial counsel was ineffective because he did not object to the introduction of the 9-1-1 recording into evidence on the basis that it violated Appellant's right to confront witnesses against her. Appellant also argues on appeal that her trial counsel was ineffective "in the absence of cross-examination of the caller . . . because the identity of the caller was known to trial counsel and he could have been subpoenaed and examined." Additionally, Appellant argues that her trial counsel was ineffective because he failed to raise a double jeopardy claim.

When an appellant alleges ineffective assistance of counsel for failure to object, the appellant must demonstrate that, if trial counsel had objected, the trial court would have erred in overruling the objection. *See Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011). We note that the Confrontation Clause does not apply to nontestimonial statements. *See Sanchez v. State*, 354 S.W.3d 476, 485 (Tex. Crim. App. 2011). We also note that "9-1-1 calls initiated to summon

13

police assistance are generally nontestimonial because they are 'a cry for help' or 'the provision of information enabling officers to end a threatening situation.'" *Hunter v. State*, No. 06-17-00083-CR, 2017 WL 4799103, at *2 (Tex. App.—Texarkana Oct. 25, 2017, no pet. h.) (mem. op., not designated for publication) (quoting *Davis v. Washington*, 547 U.S. 813, 832 (2006); *Cook v. State*, 199 S.W.3d 495, 498 (Tex. App.—Houston [1st Dist.] 2006, no pet.)). Because the witness called 9-1-1 "to obtain police assistance in response to a potential crime or situation still in progress," the witness's statements were not testimonial, and the trial court would not have erred if it overruled an objection to the admission of the 9-1-1 recording on Confrontation Clause grounds. *Hunter*, 2017 WL 4799103, at *2.

Generally, a trial counsel's failure to call a witness does not constitute ineffective assistance of counsel without a showing that the witness was available to testify and that his testimony would have benefited the accused. *Butler v. State*, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986). The record does not reveal that the witness who called 9-1-1 was available to testify, nor does it reveal trial counsel's reasoning for why he did not call the witness to testify. Furthermore, "'[t]he decision whether to call a witness is clearly trial strategy and, as such, is a prerogative of trial counsel.'" *Guerra v. State*, No. 01-15-00650-CR, 2016 WL 6212999, at *21 (Tex. App.—Houston [1st Dist.] Oct. 25, 2016, no pet.) (mem. op., not designated for publication) (quoting *Brown v. State*, 866 S.W.2d 675, 678 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd)).

Additionally, we held under Appellant's third issue that Appellant's convictions for both resisting arrest, search, or transportation and interference with public duties do not violate the Double Jeopardy Clause. Therefore, there was not a reasonable probability that the result would have been different if Appellant's trial counsel had raised a double jeopardy claim in the trial court. We hold that nothing

in the record demonstrates that Appellant's trial counsel rendered ineffective assistance when he failed to object to the admission of the recording of the 9-1-1 call into evidence on Confrontation Clause grounds, failed to call the witness who called 9-1-1 to testify, or failed to raise a double jeopardy claim. Appellant's fourth issue is overruled.

We affirm the judgments of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


December 29, 2017

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.